UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CHAOHUI TANG, JIANLIN LI, QINGZE LIU,
*on behalf of themselves and all others similarly situated,*

                Plaintiffs,                                  **ORDER**
                                                                    **14 CV 390 (JBW)(LB)**

    -against-

WING KEUNG ENTERPRISES, INC. and
KEUNG CHANG,

                Defendants.
-----------------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

    I.    Procedural History

    Plaintiffs, on behalf of themselves and all others similarly situated, bring this action alleging that their former employer, Wing Keung Enterprises and Keung Chang, ("defendants"), violated their rights to receive minimum wage and overtime pay pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). As defendants contend that they are exempt under the Motor Carrier Act (MCA), the parties conducted discovery specific to that issue. Following discovery on the applicability of the Motor Carrier Act exemption, defendants moved for summary judgment. In addition to arguing that they are exempt under the MCA, defendants argue in the alternative that they are entitled to summary judgment because they paid plaintiffs minimum wage and overtime in accordance with the FLSA and NYLL. To support this argument, defendants' motion for summary judgment included payroll and time sheet records. Defendants claim that prior to November 2010, employees clocked in and out with a Lathem badge scanner and pin entry system. From November 2010 onwards, employees clocked in and out with a biometric recognition system, first using a Lathem Fingerprint Scanner and later using a Lathem Facial Recognition Time Clock. (Defs. Aff. in Opp. to Pls.' Mot. for Cert. of a

Collective Action at ¶ 43; ECF No. 42, p. 9.)[1] In plaintiffs' opposition to the motion, they alleged that the records defendants relied upon were falsified. Presented with this dispute, defendants' motion for summary judgment was held in abeyance and Judge Weinstein referred the case to me to address both plaintiffs' claim that the records were falsified and plaintiffs' motion for a collective action.

Plaintiffs move for conditional certification of a FLSA collective action and defendants oppose the motion. Plaintiffs' allegation that defendants falsified or failed to accurately keep time records is central to the motion for certification. Plaintiffs argue that the proposed class members were similarly situated "because the defendant had and continues to have the policy of requiring all employees to perform job duties over 60 hours while, at the same time, systematically failed to record those hours and pay overtime wages." Pls. Memo of Law, p. 3 (ECF No. 39). "[A]ll plaintiffs testified that the defendants had the policy systematically [sic] not recording all employees' overtime work hours after 4:30 p.m." Pls. Reply, p. 5 (ECF No. 45). "[The defendants' records] evidence that either the defendants falsified those records or failed to accurately records [sic] the overtime hours." Id. at p. 6. "[E]ither the defendants falsified those records or failed to accurately record the hours." Id. As plaintiffs' allegation that defendants falsified the time records is central to plaintiffs' claim that the Court should certify a collective action, the Court held an evidentiary hearing.

---

[1] Lathem is the name of the company that creates the time clock system. See http://www.lathem.com/.

II.  The Evidentiary Hearing[2]

At the hearing, plaintiffs first called Kong Jun to testify. Jun's testimony undermined the plaintiffs' contention that employees were prevented from clocking out themselves. Jun also testified that the machine to punch in and out was mounted "on a wall" outside the office door, which conflicted with the other witnesses' testimony regarding where the clock was located. (Tr. 24-24).[3] He testified that the entire time he worked at Wing Keung, he "punched in" when he arrived and "punched out" when he left using a fingerprint machine:

| | |
|---|---|
| THE COURT: | So when you got there, that's the first thing that you did? When you got there in the morning at 6:00 a.m? |
| THE WITNESS: | Yes, I go in the office door, the company door. The office is right next to it so I go there and punch in. |
| THE COURT: | And when you left, you did the same thing to leave? |
| THE WITNESS: | Yes. |
| THE COURT: | And that was the way it was all of the months that you worked there? |
| THE WITNESS: | Yes. |
| THE COURT: | And you always punched in and punched out? |
| THE WITNESS: | Correct. |

(Tr. 24.)

Jun stated that the system "started as a fingerprint, and later on [the employer] took a picture even." (Tr. at 25.)

Plaintiff Jun testified that generally "[defendants] wouldn't give [employees] time to eat" even though defendants' time records deducted a thirty minute meal break. (Tr. at 28.) However,

---

[2] The hearing was slow and difficult. While the need for interpretation of the proceeding slowed things a bit, the real source of the difficulty was that plaintiffs' counsel was utterly unprepared for the hearing, as were her clients. Counsel had been specifically instructed that the purpose of the hearing was to address the claim that the time records had been falsified. However, from the start, plaintiffs' counsel was unable to formulate questions to elicit the most basic facts, such as how long the plaintiffs worked at the defendants' company, what hours they worked, and how they were paid. Plaintiffs' counsel took several minutes between questions and instead of asking the witnesses questions, she frequently testified herself, resulting in objections from defendants' counsel and the Court's intervention. The Court took a break to allow counsel to prepare herself and her clients; however that did little to focus the examination. As counsel was struggling, the Court questioned the witnesses.

[3] "Tr." refers to the transcript of the hearing. (ECF No. 48.)

3

Jun later stated that sometimes he would eat "on the outside" and sometimes he would "take a moment to eat on the premises." (Tr. at 29.)

Unlike Jun, plaintiff Tang testified that he was unable to clock out at the end of the day. His testimony conflicted with Jun as he stated that the machine was never mounted on the wall and that "somebody" would remove the machine:

> MS. YOU: Was the time machinery movable?
> TANG: Right.
> MS. YOU: Was the machine ever mounted on the wall?
> TANG: No.
> MS. YOU: Who would remove that machine back?
> TANG: Somebody at the office.

(Tr. at 35.) Tang described the machine as being on "a table right outside the window of the office." (Tr. at 56.)

Tang later testified, albeit in a convoluted manner, that when he went to "Buffalo" the first year that he worked, he would come back late and was unable to clock out for himself.[4] (Tr. 55-56.) He testified that in the second year that he worked for defendants, he was generally able to clock himself out when he returned from a delivery route. (Tr. at 56.) Tang testified that he didn't know what his time sheets or pay stubs stated. Further, he testified that he "couldn't get paid unless [he] signed for it even if [the records] were fake." (Tr. at 57.) He again reiterated that if he did not sign, he would not get paid. However he did not testify that anyone ever refused to pay him or that anyone ever said he would not be paid if he did not sign:

> MS. SPINELLI: Did you ever have a conversation with anyone? Did anybody ever refuse to pay you if you didn't sign it?
> TANG: No, but I would not have tried it anyway.

---

[4] Defendant's counsel attempted to elicit testimony to show that Tang may have been mistaken and that he actually made deliveries to Binghamton, not Buffalo. Later, Simon Chan, defendants' manager, testified that the company does not deliver to any clients in Buffalo but does have a delivery route to Binghamton. Regardless of whether the delivery route was to Binghamton or Buffalo, New York, Tang testified that when he went on trips that had him return late in the evening, he was unable to clock out when he returned.

4

(Tr. at 58.)

Tang also testified that when he signed papers to get paid each month, he would sign off on five pages of documents. None of these documents were given to him in Chinese. (Tr. at 42-43.)[5]

Plaintiff Li's testimony came closest to supporting plaintiffs' argument that the records were falsified. Li testified that it was "very seldom" that he arrived back before 4:00 p.m., even though the time records showed Li finishing work before 4:00 p.m. on several occasions. (Tr. at 97). Li also testified that employees would use the machine to clock out only "[i]f it's there" and that "[s]ometimes when it's very late….[defendants] took [the machine] in." (Tr. at 99.) Li further testified that he was never told how much he was going to be paid by the hour. That part of Li's testimony was consistent with the other plaintiffs' testimony by plaintiffs that they were told a set figure they would be paid each month – starting with $2,800 for the first month and increasing by $100 for subsequent months.[6] However, Li never saw someone remove the machine to clock out. He did not testify with any particularity about being unable to clock out. He did not give the name of a specific individual who told him he could not clock in or out.

Simon Chan, the general manager of Wing Keung, was called by plaintiff and questioned by both parties. He testified that the fingerprint procedure to clock in and out was in use since about 2010. (Tr. at 71). The machine was movable, but was kept outside the office door on a counter. (Tr. at 72-73). He testified that employees clocked themselves in and out, unless they forgot or

---

[5] As these documents were provided to the employees at the time they were paid, Tang is describing pay stubs. The FLSA requires that an employer keep and preserve payroll records. See generally 29 C.F.R. § 156.2. The FLSA does not require that an employer provide pay stubs to employees. See also "elaws – Fair Labor Standards Act Advisor." United States Dep't of Labor. www.dol.gov/elaws/faq/esa/flsa/018.htm (last visited July 23, 2015) ("[T]he FLSA does not require an employer to provide employees pay stubs."). New York Labor Law does require that an employer provide employees with a pay stub listing "hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages." 12 N.Y.C.R.R. 146-2.3. The New York Wage Theft Prevention Act requires that *at the time of hire*, an employee must give written notice of the employee's rate of pay in English and his primary language (if the New York DOL offers a translation). See "Fact Sheet." New York State Department of Labor: Wage Theft Prevention Act. https://labor.ny.gov/formsdocs/wp/P715.pdf (last visited July 23, 2015). The law does not require employers to provide pay stubs in the employee's primary language.

[6] On cross-examination, defendants' counsel elicited that Li and Tang were fired by defendants, allegedly for stealing from the company. (Tr. at 102.)

were on an overnight trip. In those instances, he would manually input the time, which the Lathem system reflects by displaying a plus sign (+) next to that entry on the time sheet. (Tr. at 77-79.) Chan testified that he would input the time based either on a cover sheet filled out by the driver recording the start and stop times during the trip, or, if the driver had clocked out, he would use that time to manually clock out the worker who had accompanied the driver on that particular delivery route:

> THE COURT: And if they gave you that cover sheet, you would input that time for both the driver and for the person who loaded the truck who was not the driver?
> THE WITNESS: Not both the driver. Just only if they didn't punch out themselves.
> THE COURT: If the driver didn't punch out or if the assistant like these gentleman?
> THE WITNESS: Anybody. If the driver didn't punch out or the assistant.
> THE COURT: So you used the cover sheet to put a punch-out time?
> THE WITNESS: Yes.
> THE COURT: And so, it [+] was an override for the identification system that you had?
> THE WITNESS: No, only when it was blank.
> THE COURT: Excuse me.
> THE WITNESS: It's an override. Because if it's blank it would show a question mark instead, so I would have to manually input the time.
> THE COURT: And so, how often did you have to manually input time?
> THE WITNESS: It really depends. Sometimes. Maybe sometimes a lot of drivers keep forgetting when they punch out. Sometimes they forget in the morning too.

(Tr. 70-71.)

Li's testimony, while much different than Chan's, acknowledged that the drivers did carry some sort of cover sheet with them but stated that it was not something the drivers filled out when they returned:

> THE COURT: And how about a cover sheet? He said that there were drivers who would fill out a cover sheet, so that if you got back too late....
> THE WITNESS: Yeah, that's not something we fill out when we come back. It's a sheet that they gave us when we departed. Like the invoice. Together with invoice [sic], it was given to us.

(Tr. 100-101.)

6

III.   The Legal Standard

The FLSA puts the burden on the employer to keep accurate time records. 29 C.F.R. § 211(c). "When an employer has kept proper and accurate records, the employer may easily discharge his burden by securing the production of those records." Anderson v. Mt. Clemens, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds,* Integrity Staffing Solutions, Inc. v. Busk, U.S., 135 S. Ct. 513 (2014). Conversely, when an employer has "inaccurate or inadequate" records, the plaintiff "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Mt. Clemens, 328 U.S. at 687 (1946). Courts have held that at this stage, it is possible for plaintiff to meet the burden by relying on his recollection alone. Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection.").

Defendants here have produced time sheets which they contend are "proper and accurate records" in order to discharge their burden. Plaintiffs allege that the records are falsified – i.e., that they are "inaccurate or inadequate records." If defendants' records are accurate, they have discharged their burden under the FLSA. The question here is whether plaintiffs' testimony is sufficient to establish that defendants' records are inaccurate.

Courts within this Circuit have grappled with this question in the specific context of when an employee testifies that the employee herself falsified time sheets at the direction of the employer. In Seever v. Carrols Corporation, plaintiffs alleged that defendants told them to work "off the clock" hours in addition to the regular hours recorded on their timesheets. 528 F. Supp. 2d 159

7

(W.D.N.Y. 2007). Plaintiffs alleged defendants directed them not to record those hours on their timesheets, over which plaintiffs had control. Plaintiffs argued that the Anderson burden of proof should apply and that the district court should find their recollection as sufficient *prima facie* proof of uncompensated hours worked. The court rejected plaintiffs' argument, stating, "[i]f the Court were to accept plaintiff's argument, any plaintiff wishing to take advantage of the lesser burden of proof offered by Anderson need do nothing more than fabricate an admission that he 'lied' on his time records, thereby rendering the employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.'" The Seever court relied heavily on the fact that the inaccuracies were "self-created" by plaintiffs in coming to its conclusion that plaintiffs were not entitled to the lesser burden of proof under Anderson. However the Court went on to hold that even affording plaintiffs the lesser burden under Anderson, they were unable to rebut defendants' evidentiary showing which negated any "just and reasonable inference" that they worked uncompensated hours off the clock.

The Second Circuit questioned the reasoning of Seever in Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011). The plaintiff in Keubel alleged that he only recorded forty hours per week on his timesheets at the specific direction of his supervisors, who were aware he was working overtime hours for which he was uncompensated. The district court, relying heavily on Seever, granted summary judgment for defendants on plaintiff's off-the-clock claims since any inaccuracies in his timesheets were admittedly "self-created." The Second Circuit reversed, holding that plaintiff was entitled to the lesser burden of proof set forth by Anderson. In the Circuit's view, plaintiff "presented sufficient evidence for a reasonable jury to conclude that he has shown the amount of his uncompensated work 'as a matter of just and reasonable inference.'" Kuebel, 643 F.3d at 364 (quoting Anderson, 328 U.S. at 687). The Kuebel decision

was silent on when, if ever, a plaintiff would not be entitled to the lesser burden of proof set forth under Anderson because the employer has in fact come forward with accurate and complete records.

Anderson itself contemplates that there must be a way for a defendant to "easily discharge its burden" by producing accurate and complete records. In such a case, plaintiff would not be entitled to the lesser burden of proof. Kuebel recognizes that a plaintiff's own testimony may be sufficient to challenge the accuracy of the records. However, in the present case, the plaintiffs' testimony was not sufficient to establish that the defendants' records were falsified, inaccurate, or incomplete. Unlike in Seever and Kuebel, where plaintiffs were responsible for manually recording their own hours, defendants here did not delegate the duty to plaintiffs to manually record overtime hours. Rather, defendants' records were generally produced from a sophisticated Lathem fingerprint scanner; times were only manually entered when employees forgot to clock in or out or were on delivery routes that kept them overnight. Therefore, under these circumstances, and in light of the inconsistencies in plaintiffs' testimony, plaintiffs have not established that the records are inaccurate or incomplete. Thus, plaintiffs here are not entitled to the lesser burden of proof set forth in Anderson.

However, even assuming that plaintiffs' testimony was sufficient to question the accuracy of defendants' records here, plaintiffs' testimony fails to meet even the lesser burden under Anderson. "[Anderson] requires the plaintiff in a falsified records case to present a *prima facie* case as to the unpaid overtime hours worked before the burden of proof shifts to the defendant.....[T]his burden must be met individually by each plaintiff in a case such as this where differing work situations make pattern evidence unpersuasive." Murray's v. Stuckey's, Inc., 939 F.2d 614, 621 (8th Cir. 1991). Under Anderson, plaintiffs must establish "as a matter of

fair and reasonable inference" that they worked hours they were not compensated for. Plaintiffs' testimony here, even taken collectively and allowing the most generous inferences, fails to meet that burden. As discussed below, some of defendants' practices raise the Court's concern. However, unlike Kuebel, or even Seever, plaintiffs' testimony here was extremely general. Plaintiffs did not testify to any specific inaccuracies in the records or to any individual's conduct to establish that the records were falsified. Moreover, the three plaintiffs testified inconsistently and did not establish as a matter of fair and reasonable inference that they worked hours they were not compensated for.[7] None of plaintiffs' witnesses testified that a specific individual told them they could not clock out or instructed them to clock out early. No witness testified to a specific date that the time records were inaccurate or how often the time clock was moved. Nor did any plaintiff testify to a particular day or week during which they worked hours which they were not paid for. Based on the testimony presented, plaintiffs have not presented a *prima facie* case that they worked unpaid overtime hours for which they were not compensated. As plaintiffs failed to make this threshold showing, the burden does not shift to the defendant. On this record, there is no basis to discredit the time records presented by defendants.

This is not to say that the defendants' pay practices make sense to the Court or are in full compliance with the law. While plaintiffs presented no specific testimony to support the allegation they were unable to clock in and out, plaintiffs did consistently testify that they were paid a single straight wage per month.[8] There was also testimony that a portion of employees'

---

[7] The Court has taken the difficulties posed by the language barrier into account. None of the plaintiffs speak English and all testified with the assistance of an interpreter. But even crediting plaintiffs' testimony as generously as possible and being cautious regarding misunderstandings due to language, plaintiffs' testimony still does not meet the lesser burden set by Anderson.

[8] For example, Jun testified that he made $1,500 the first month he worked for defendants, $1,600 the second month he worked for defendants, with an increase of $100 each month. He testified his pay was not connected to his hours. (Tr. 10-11). Defendants' own witness, Mr. Xu, testified that employees were paid monthly because they "preferred" to be paid one time per month. Xu claimed that the employees were paid by the hour but Xu was unsure what his

wages was provided by check and a portion was given in cash. Taken as true, the Court has no explanation for why employees were required to clock in and out if they were paid a straight monthly wage not tied to the hours they worked each week.[9] However, even though defendants' pay practices may raise questions, plaintiffs' testimony that they were on occasion unable to record the time they clocked out does not establish that defendants fabricated or falsified the records.[10]

IV. Plaintiffs' Motion for Certification of a Collective Action

Plaintiffs seek conditional certification as a collective action pursuant to 29 U.S.C. § 216(b). The FLSA provides in pertinent part that:

> An action…may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No

---

hourly rate was and his testimony also questions whether the employees' wages are in fact tied to the hours they worked:

| | |
|---|---|
| THE COURT: | You're paid monthly. What are you paid monthly? |
| THE WITNESS: | 2,900. Later on increased to 3,000. |
| THE COURT: | And did that change? |
| THE WITNESS: | No. |
| THE COURT: | So it was 2,900 a month and then it was later 3,000 a month? |
| THE WITNESS: | Correct. |
| THE COURT: | And it didn't matter how many hours? |
| THE WITNESS: | Sometimes, you know, we conducted, occasionally, we will be earlier or later we get a little bit extra. |
| THE COURT: | Were you ever told what you were paid per hour? |
| THE WITNESS: | Yes. They would pay according to the legal – the law. |
| THE COURT: | So what is that? What do you get per hour? |
| THE WITNESS: | I was getting a little bit over $9 or so. |

(Tr. 108-109).
Nevertheless, while the defendants' pay practices may raise questions, plaintiffs brought their motion on the basis that the defendants records were falsified because plaintiffs were physically prohibited from clocking in and out by the removal of the machine. At this time and on this record, the Court does not find the plaintiffs' testimony sufficient to conclude that plaintiffs were prohibited from clocking in and out.

[9] While there was testimony that employees were docked pay if they were late (Tr. at 81), the employees testified they were paid monthly and the amount they were paid was not based on the hours they worked.

[10] In plaintiffs' motion for certification of a collective action, they again allege they were paid a flat rate wage "regardless of whether they actually worked over 60 hours or not." (ECF No. 39 at p. 4). Plaintiffs all make this allegation in their supporting declarations. Yet, plaintiffs again do not state how frequently they each worked more than 40 hours per week but were not paid for overtime. All plaintiffs generally assert they "regularly" worked approximately 70 hours a week but were only paid a flat rate. The only finding the Court makes with respect to this allegation is that plaintiffs' extremely general assertions, in light of defendants' records, do not, without more, satisfy plaintiffs' lesser burden under Anderson.

employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The "certification" of a FLSA collective action "is only the district court's exercise of the discretionary power, upheld in [Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members." Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). "[U]nlike class certification under Fed. R. Civ. P. 23, no showing of numerosity, typicality, commonality and representativeness need be made for certification of a representative action." Cuzo v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

Courts within this Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). "The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." Lynch, 491 F. Supp. 2d at 368. "During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." Id. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

Plaintiffs' motion concerns the first step of the process. At this stage, plaintiffs' burden is "minimal." Lynch, 491 F. Supp. 2d at 368. "[P]laintiffs need only make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

"[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch, 491 F. Supp. 2d at 368. "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat....certification." Id. at 369 (citation omitted). However, "[t]he modest factual showing cannot be satisfied simply by unsupported assertions." Myers, 624 F.3d at 555 (internal quotation omitted). "[I]t should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist." Id.

Despite the low threshold, plaintiffs have not met their modest factual showing that plaintiffs and potential opt-in plaintiffs are sufficiently similarly situated. Plaintiffs' motion for certification of a collective action centers on the allegation that plaintiffs were similarly situated as they were subject to the "common policy" of being unable to clock out since defendants consistently made the machine inaccessible. In order to support this argument, plaintiffs dispute the validity of time records produced by defendants, which defendants contend are complete and accurate. Plaintiffs have not established that defendants' records were falsified. Plaintiffs' other allegations that defendants maintained a common policy or plan that violated the law are so generalized and vague that on this record, the Court denies the motion for certification of a collective action. As I find that plaintiffs have not met the minimal burden to certify a collective action, I do not address the parties' other disputes regarding the definition of the proposed class.[11]

---

[11] The denial of plaintiffs' motion for a collective action is without prejudice. Ms. You no longer represents plaintiffs. It is possible that plaintiffs could replead specific facts to satisfy their burden that defendants maintained a common policy or plan that violated the law.

The Court shall hold a status conference in this action on September 3, 2015 at 9:30 a.m. in Courtroom 11A South. The parties are strongly urged to discuss settlement.

SO ORDERED.

                                                                              /S/
                                              LOIS BLOOM
                                              United States Magistrate Judge

Dated: August 7, 2015
       Brooklyn, New York