UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
CHAOHUI TANG, JIANLIN LI, JIAN LIU,
and QINGZE LIU,
on behalf of themselves and all others
similarly situated

                                **MEMORANDUM AND
                                ORDER**

                         Plaintiffs,          14-CV-390

        -against-

WING KEUNG ENTERPRISES, INC. &
KEUNG CHAN,
                     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**Appearances**


**Plaintiffs**

                             Heng Wang
                             Heng Wang & Associates, P.C.
                             7 Mott Street, Suite 600
                             New York, NY 10013


**Defendants**

                             Gail Ellen Spindler
                             Trop and Spindler, Esqs
                             19-02 Whitestone Exp
                             Suite 202
                             Whitestone, NY 11357

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I. Introduction ................................................................................................................ 2

II. Facts ......................................................................................................................... 3

   A. Defendants ............................................................................................................ 3

   B. Plaintiff Drivers .................................................................................................... 4

      1. Plaintiff J. Liu ................................................................................................. 5

      2. Plaintiff Li ....................................................................................................... 6

   C. Plaintiff Loaders .................................................................................................. 7

      1. Plaintiff Tang .................................................................................................. 7

      2. Plaintiff Q. Liu ................................................................................................ 8

III. Procedural History .................................................................................................... 9

   A. Defendants' Motion for Summary Judgment ........................................................ 9

   B. Denial of Collective Action Certification; No Falsification of Documents ............. 10

   C. Plaintiffs' Motion for Summary Judgment ........................................................... 12

   D. Magistrate Judge Referral: MCA Exemption ...................................................... 12

IV. Law .......................................................................................................................... 14

   A. Standard of Review ............................................................................................ 14

      1. Magistrate Judge Order and Report and Recommendation .............................. 14

      2. Summary Judgment ........................................................................................ 14

   B. Minimum Wage and Overtime ............................................................................ 15

      1. Fair Labor Standards Act ("FLSA") ................................................................ 15

      2. New York Labor Law ("NYLL") ..................................................................... 16

      3. Motor Carrier Act ("MCA") ........................................................................... 18

      4. Statute of Limitations ..................................................................................... 26

V. Application of Law to Facts ....................................................................................... 28

   A. FLSA and NYLL Overtime Claims: Extent of MCA Exemption ........................... 28

      1. Magistrate Judge Report and Recommendation ............................................... 31

      2. Plaintiffs' Objections ...................................................................................... 33

      3. Defendants' Objections ................................................................................... 46

      4. Magistrate Judge Conclusions Adopted ........................................................... 48

**B.**    **FLSA and NYLL Minimum Wage Claims** ............................................................... 48

**C.**    **Lack of 56.1 Statement** ................................................................................... 51

**D.**    **Plaintiffs' Motion for Reconsideration** ......................................................... 52

**E.**    **Statute of Limitations** ..................................................................................... 53

    **1.**    **FLSA Claims** ............................................................................................ 54

    **2.**    **NYLL Claims** .......................................................................................... 55

**VI.**   **Conclusion** ......................................................................................................... 55

**VII.**  **Appendix** ........................................................................................................... 59

## I.    Introduction

This case concerns wage and overtime claims brought by truck drivers and loaders who ride with them.  Their claims turn, in part, on exemptions from state and federal overtime requirements applicable to employees who work on vehicles engaged in interstate transportation of products.  The fact that some routes are intrastate complicated fact finding.  Assisting the jury will require breaking down of the case into many discrete time periods.  *See infra* Part VII.

Plaintiffs Chaohui Tang, Jianli Li, Jian Liu, and Qingze Liu ("plaintiffs") are delivery truck drivers and loaders formerly employed by defendant Wing Keung Enterprises, Inc. ("Wing Keung"), a wholesale food business located in Queens, New York.

Alleged are minimum wage and overtime payment violations under both the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL"), and failure to provide required notices pursuant to the New York Wage Theft Prevention Act ("WTPA").  Defendants claim exemption under the federal Motor Carriers Act ("MCA").

Defendants move for summary judgment.  They argue that (1) they are exempt from the FLSA and NYLL overtime requirements under the MCA; and, in any event, (2) they paid plaintiffs the required minimum wages and other benefits under state and federal law.  Mem. in Supp. of Defs.' Mot. for Summ. J., Oct. 24, 2014, ECF No. 13-2 ("Defs.' Summ. J. Mem.").

Plaintiffs cross-move for summary judgment.  They claim that (1) they are entitled to "shortfall and liquidation damages" because defendants falsified or failed to keep "proper and accurate employment records" in violation of the FLSA and NYLL; (2) defendants were not exempt under the MCA; and (3) plaintiffs were not paid in accordance with applicable labor laws. *See* Mem. in Supp. of Pls.' Mot. for Summ. J., Oct. 19, 2015, ECF No. 54 ("Pls.' Summ. J. Mem."); *see also* Affirmation of Bo Chen in Supp. of Pls.' Mot. for Summ. J., Oct. 22, 2015, ECF No. 56 ("Chen Affirmation").

The question of whether and to what extent plaintiff employees were covered by the MCA exemption to the overtime requirements of the FLSA and NYLL was referred to the magistrate judge.  For the reasons stated in this memorandum and orally on the record, the magistrate judge's findings are adopted in full.  *See generally* Hr'g Tr., Sept. 7, 2016, ECF No. 87.  Objections to the report and recommendations are dismissed.  Defendants' summary judgment motion is granted in part and denied in part.  Plaintiffs' summary judgment motion is denied.  Plaintiffs' motion for reconsideration is denied.  The case is set down for trial.

## II.    Facts

### A.    Defendants

Corporate defendant Wing Keung is engaged in distributing fresh produce, refrigerated food and restaurant supplies to restaurants located primarily in New York, New Jersey, and Connecticut.  *See* Affirmation of Gail E. Spindler in Supp. of Defs.' Mot. for Summ. J., Oct. 24, 2014, ECF No. 13-1 ("Spindler Affirmation"), at ¶ 5; *see also* Defs.' Summ. J. Mot. at Ex. C, ECF No. 13-8.  It is a carrier registered with the United States Department of Transportation.  *See* Defs.' Summ. J. Mot. at Ex. C, ECF No. 13-8.  Wing Keung owns approximately eighteen large trucks,

*see* Splinder Affirmation at ¶ 6, and employs twenty-three drivers, *see* Defs.' Summ. J. Mot. at Ex. C, ECF No. 13-8.

Individual defendant Keung Chan is the Chief Executive Officer of Wing Keung. Am. Compl., Mar. 7, 2014, ECF No. 5 ("Am. Compl."), at ¶ 2; Answer to Am. Compl., May 22, 2014, ECF No. 8, at ¶ 2.

### B.      Plaintiff Drivers

Plaintiffs Jian Liu ("J. Liu") and Jian Lin Li ("Li") were employed by defendants as truck drivers. Decl. of J. Liu in Opp'n to Defs.' Mot. for Summ. J., Nov. 17, 2014, ECF No. 16 ("J. Liu First Decl."), at ¶¶ 2-3; Decl. of Li in Opp'n to Defs.' Mot. for Summ. J., Nov. 14, 2014, ECF No. 18 ("Li First Decl."), at ¶¶ 2-3. They drove trucks delivering to destinations within and outside the State of New York. Am. Compl. at ¶ 4.

Plaintiffs J. Liu and Li contend that all drivers employed by Wing Keung drove fixed routes. J. Liu First Decl. at ¶ 7; Li First Decl. at ¶ 7. Defendants first asserted that J. Liu's and Li's routes were not fixed, and that they were likely to be called on to perform interstate travel at any time regardless of their current assignment. Affirmation in Reply of Gail E. Spindler, Nov. 26, 2014, ECF No. 22 ("Spindler Reply Affirmation"), at ¶¶ 19-22; Decl. of Simon Chan in Reply, Nov. 26, 2014, ECF No. 22-2 ("S. Chan Reply Decl."), at ¶¶ 14-18; Decl. of Fen Zhen Chen in Reply, Nov. 26, 2014, ECF No. 22-3 ("F. Zhen Reply Decl."), at ¶¶ 15-18. They then conceded that "[t]he drivers, driver's helpers and loaders *were not randomly assigned to the out of state routes* as it was beneficial for each driver, helper and loader to be familiar with the routes, *and once trained for the route was kept on that route*." Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74 (emphasis added) (further stating that "once trained for a particular route the same driver and loader was usually assigned that route").

### 1.     Plaintiff J. Liu

J. Liu states he was employed by defendant Wing Keung from October 2010 to July 2011 and then from October 2012 to October 2013.  J. Liu First Decl. at ¶ 2; Decl. of J. Liu in Supp. of Pls.' Mot. for Summ. J., Oct. 16, 2015, ECF No. 54-3 ("J. Liu Second Decl."), at ¶ 2.  He claims to have worked approximately six days a week for a total of 70 hours or more per week and to have been paid a flat wage of $2,800 a month, with no overtime.  J. Liu First Decl. at ¶¶ 3-4; J. Liu Second Decl. at ¶ 8.

According to his first declaration, from July 2011 to October 2012, J. Liu worked for a different company in Las Vegas.  J. Liu First Decl. at ¶ 2.  Defendants have produced paystub records for J. Liu covering part of this time period—from August 2011 to December 2011.  *See* Defs.' Summ. J. Mot. at Ex. G3, ECF No. 13-23.  Defendants have also produced paystubs for the periods from November 2010 to July 2011 and October 2012 to September 2013.  *Id.*  None were submitted for the period from October 2010 to November 2010 and September 2013 to October 2013.  *Id.*

J. Liu first stated that from October 2012 to October 2013 he exclusively made deliveries within the State of New York.  J. Liu First Decl. at ¶ 8.  He then stated that, from October 2010 to July 2011 and then from October 2012 to April 2013, he delivered groceries and frozen foods from Wing Keung's Queens warehouse to restaurants in Connecticut, upstate New York, and New Jersey.  J. Liu Second Decl. at ¶¶ 3-4.  He said he made deliveries only within New York State from April 2013 to October 2013.  *Id.* at ¶ 4.

Plaintiff J. Liu has no records of his hours worked and payments, because, he says, he "did not receive monthly statements from Wing Keung during [his] employment."  J. Liu First Decl. at ¶ 5.  Instead, he explains that he was paid on a monthly basis, when he "had to sign four [documents] at one time."  J. Liu Second Decl. at ¶ 9.

5

J. Liu disputes the time entries contained in the documents submitted by defendants.  He argues that defendants' records are "fabricated" and that his signature is "fake."  *Id*.  No objection has been raised with respect to the paystubs relating to time periods when plaintiff J. Liu claimed to have been working for a different company in Las Vegas.

> ### 2.    Plaintiff Li

Plaintiff Li first contended that he was employed by Wing Keung from September 2009 to December 2010; from May 2012 to January 2013; and then from August 2013 to November 2013. Li First Decl. at ¶ 2.  He did not mention the last period of employment, from August 2013 to November 2013, in his second declaration.  Decl. of Li in Supp. of Pls.' Mot. for Summ. J., Oct. 19, 2015, ECF No. 54-2 ("Li Second Decl."), at ¶ 2.  According to Li, he worked approximately 70 hours or more per week during his employment at Wing Keung and was paid a flat monthly wage ranging from $2,800 to $2,900, regardless of any overtime.  *Id*. at ¶¶ 3-4.

He claims that from December 2010 to May 2012, he worked for another company in New Orleans.  Li First Decl. at ¶ 2.  Defendants have produced paystub records for him that include March 2011.  Defs.' Summ. J. Mot. at Ex. G2, ECF No. 13-22.  Paystubs were also submitted for the period from January 2010 to December 2010, May 2012 to December 2012, and August 2013 to November 2013.  *Id*.  None were submitted for the period from September 2009 to December 2009 and for January 2013.  *Id*.

In his second declaration, Li claimed that all of his delivery routes were within the State of New York.  *See* Li Second Decl. at ¶ 5.  He did not mention the period of employment between August 2013 and November 2013.

Like J. Liu, plaintiff Li says that he has no records of his hours worked and payments, because he "did not receive monthly statements from Wing Keung during [his] employment."  Li

First Decl. at ¶ 5.  Instead, he explains that he was paid on a monthly basis and that he needed "to sign on four or five [documents], one for each week."  Li Second Decl. at ¶ 8.

Like J. Liu, he disputes the time entries contained in defendants' records, but does not challenge the accuracy of the paystubs relating to time periods where he claimed to have been working for a different company in New Orleans, or the fact that defendants did not submit paystubs for some time periods for which he claims employment.  He also contends that defendants' records are "fabricated" and that his signature is "fake."  *Id.*

### C.    Plaintiff Loaders

Plaintiffs Chaohui Tang ("Tang") and Qingze Liu ("Q. Liu") were employed as loaders.  Their responsibilities included loading merchandise on the trucks in the Wing Keung warehouse in Queens, traveling with the drivers, unloading the merchandise at the various customer destinations, and traveling back on the truck with the drivers to the warehouse.

### 1.    Plaintiff Tang

In his first declaration, plaintiff Tang stated that he was employed by Wing Keung from September 2009 to November 2013.  Decl. of Tang in Opp'n to Defs.' Mot. for Summ. J., Oct. 31, 2014, ECF No. 17 ("Tang First Decl."), at ¶ 2.  In his second declaration, submitted in support of plaintiffs' motion for summary judgment, Tang said he worked for Wing Keung from September 2011 to September 2013.  Decl. of Tang in Supp. of Pls.' Mot. for Summ. J., Oct. 19, 2015, ECF No. 54-1 ("Tang Second Decl."), at ¶ 2.  Defendants have submitted paystub and other employment records from October 2011 to November 2013.  Defs.' Summ. J. Mot. at Ex. G1, ECF No. 13-21.  None were submitted for the period between September 2009 and September 2011.

Plaintiff Tang explained that his duty was to "load the outbound trucks at the warehouse from Flushing, Queens . . . ride with the truck and help the driver to unload the truck when we arrived [at] the Chinese restaurants either in New York or another state. . . . The loader is always

following [*sic*] the assigned truck to help the driver to load or unload the goods, and back to the company with the truck at the end of the day." Tang Second Decl. at ¶ 2.

According to Tang, from September 2011 to July or August 2012 he worked for the "long distan[ce] routes to upstate New York, New Jersey and Pennsylvania," providing assistance with the loading and unloading of the truck. Tang Second Decl. at ¶ 4. From around September 2012 to September 2013 he allegedly changed to New York routes. *Id*. at ¶ 5.

Claimed by plaintiff Tang is that he worked about 70 hours or more per week and was paid a flat wage of $2,000 or $2,400 per month, regardless of any overtime. Tang First Decl. at ¶¶ 3-4. He explained that he was generally paid up to $2,400 when he worked on the out-of-state routes. Tang Second Decl. at ¶ 6. This was reduced to $2,300 when he changed to the New York routes. *Id*.

Like the other plaintiffs, Tang stated that he was paid once a month, at which time he "had to sign four or five [documents]" at once. *Id*. at ¶ 7. These papers did not have time entries, but only showed "money amounts." *Id*. He also claims his signature on defendants' records was "falsified." *Id*.

### 2. Plaintiff Q. Liu

Plaintiff Q. Liu asserts he was employed by Wing Keung from about July 2011 to May 2012. Decl. of Q. Liu in Opp'n to Defs.' Mot. for Summ. J., Nov. 14, 2014, ECF No. 19 ("Q. Liu Decl."), at ¶ 2. Defendants argue that he also worked from June 2012 to August 2012, on interstate routes to New Jersey. Spindler Reply Affirmation at ¶ 15.

His duties involved loading goods onto the trucks at defendants' warehouse, under the supervision of staff, and then unloading them at the customers' stores. Q. Liu Decl. at ¶ 8. According to Q. Liu, shipping staff supervised the loading of goods, and the truck driver told him to unload specific goods at the various delivery stops. *Id*. at ¶ 8. Allegedly, Q. Liu was not required

to use his judgment in deciding how to load goods on to the truck for optimal interstate highway travel.  Decl. of Aihong You in Opp'n to Defs.' Mot. for Summ. J., Nov. 17, 2014, ECF No. 20 ("You Decl."), at ¶ 16.

Q. Liu explains that "[d]uring my work, sometime[s], I sat on the trucks which made deliveries across state lines.  However, I did not know those routes at all.  Drivers were the persons who knew routes, stops and stores.  I did not in any way participate in the operation of the trucks or direction of the routes."  Q. Liu Decl. at ¶ 7.

He claims to have worked approximately 70 hours or more per week and to have been paid a flat rate ranging from $2,200 to $2,300 per month, with no overtime.  *Id*. at ¶¶ 3-4.  He states that he does not have records for his hours worked and payment, because he "did not receive monthly statements from Wing Keung during [his] employment."  *Id*. at ¶ 5.  He too contends that the time entries showed on defendants' records were inaccurate and "doctored."  *Id*. at ¶ 6.

Unlike the other three plaintiffs, Q. Liu did not submit a second declaration.  Counsel says that he "went back to China, his testimony will be added when it is available."  Pls.' Summ. J. Mem. at 9.  Q. Liu was not present at the September 7, 2016 hearing on the parties' summary judgment motions and objections to the magistrate judge's report and recommendation.

## III.   Procedural History

### A.      Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on October 24, 2014, claiming:  (1) exemption from the overtime provisions of the FLSA and NYLL pursuant to the MCA; and (2) payment of the required minimum wage and overtime under federal and state law.  They provided payroll and other employment records in support of their claim that they complied with state and federal minimum wage and overtime payment obligations.  As already noted, plaintiffs alleged that the records submitted by defendants were false.

9

Following a hearing, defendants' motion was held in abeyance.  *See* Hr'g Tr., Mar. 18, 2015 at 21:11-17.  The John and Jane Doe and Company ABC 1-10 defendants were dismissed from the case, with leave to amend.  *See* Order, Mar. 19, 2015, ECF No. 27, at 2.  The magistrate judge was requested by the court to:  (1) determine the potential for a collective action; and (2) rule on any claim regarding the falsification of employment records.  *See id.*

### B.      Denial of Collective Action Certification; No Falsification of Documents

Plaintiffs filed a motion to certify a collective action.  The magistrate judge determined that, before considering certification, she would first have to consider plaintiffs' allegations concerning the falsification of employment records:

> [T]he Court must first address plaintiffs' allegations that defendants have falsified time keeping records in order to rule on plaintiffs' motion.  Plaintiffs' allegations of defendants' common policy of falsifying plaintiffs' hours are central to their claims and the existence of such a policy would also shape any potential collective action.

Scheduling Order, May 8, 2015.

An evidentiary hearing was conducted by the magistrate judge.  *See* Hr'g Tr., June 1, 2015, ECF No. 48.  She noted that "[t]he hearing was slow and difficult.  . . . the real source of the difficulty was that plaintiffs' counsel was utterly unprepared for the hearing, as were her clients."  Order, Aug. 7, 2015, ECF No. 52 at 3, n.2.  Following the evidentiary hearing, she concluded that plaintiffs failed to establish that the records presented by defendants were false.  *See id.* at 9-13.

Plaintiffs' motion to certify a collective action was denied.  *See id.* at 11-13.  The magistrate judge's order stated:

> Despite the low threshold, plaintiffs have not met their modest factual showing that plaintiffs and potential opt-in plaintiffs are sufficiently similarly situated.  Plaintiffs' motion for certification of a collective action centers on the allegation that plaintiffs were similarly situated as they were subject to the "common policy" of

10

> being unable to clock out since defendants consistently made the machine inaccessible.  In order to support this argument, plaintiffs dispute the validity of time records produced by defendants, which defendants contend are complete and accurate.  Plaintiffs have not established that defendants' records were falsified.  Plaintiffs' other allegations that defendants maintained a common policy or plan that violated the law are so generalized and vague that on this record, the Court denies the motion for certification of a collective action.  As I find that plaintiffs have not met the minimal burden to certify a collective action, I do not address the parties' other disputes regarding the definition of the proposed class.

*Id*. at 13 (footnote omitted).

Although the magistrate judge found that plaintiffs had failed to make the required threshold collective action certification showing, she found defendants' pay practices confusing:

> *This is not to say that defendants' pay practices make sense to the Court or are in full compliance with the law*.  While plaintiffs presented no specific testimony to support the allegation they were unable to clock in and out, plaintiffs did consistently testify that they were paid a single straight wage per month.  There was also testimony that a portion of employees' wages was provided by check and a portion was given in cash.  *Taken as true, the Court has no explanation for why employees were required to clock in and out if they were paid a straight monthly wage not tied to the hours they worked each week*.  However, even though defendants' pay practices may raise questions, plaintiffs' testimony that they were on occasion unable to record the time they clocked out does not establish that defendants fabricated or falsified the records.

*Id*. at 10-11 (emphasis added) (footnotes omitted).

In a footnote, the magistrate judge indicated that "[t]he denial of plaintiffs' motion for a collective action is without prejudice.  Ms. You [former counsel] no longer represents plaintiffs.  It is possible that plaintiffs could replead specific facts to satisfy their burden that defendants maintained a common policy or plan that violated the law."  *Id*. at 13, n.11.

Plaintiffs did not replead or file objections to the magistrate judge's order.  Her finding against certification of a collective action is adopted as an order of the court.

### C.      Plaintiffs' Motion for Summary Judgment

Plaintiffs filed a cross-motion for summary judgment.  In that motion, they again asserted that: (1) the payroll and time sheet records provided by defendants were false; and (2) plaintiffs either fully or partially qualified for protections under the FLSA and NYLL as non-exempt employees within the meaning of the MCA.  *See generally* Pls.' Summ. J. Mem.

In opposition to plaintiffs' motion, defendants filed essentially the same memorandum of law previously submitted in support of their motion for summary judgment.  *See* Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J., Nov. 12, 2015, ECF No. 58-3 ("Defs.' Opp'n Mem.").  Defendants again claimed: (1) exemption from the overtime provisions of federal and state law pursuant to the MCA; and (2) payment of state and federal minimum wage and overtime.

A hearing on plaintiffs' and defendants' motions for summary judgment was conducted on January 12, 2016.  The parties were directed to provide additional evidence in preparation for the hearing.  *See* Order, Jan. 7. 2016, ECF No. 66; Pls.' Responses to Ct.'s Questions, Jan. 11, 2016, ECF No. 73; Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74.

### D.      Magistrate Judge Referral: MCA Exemption

On consent of the parties, the question of whether and to what extent the MCA exemption to the overtime requirements of the FLSA and NYLL applies to the instant case was referred to the magistrate judge.  *See* Order, Jan. 21, 2016, ECF No. 75.  Specifically, the magistrate judge was asked to issue a report and recommendation addressing the following questions:

- *First*, the legal question concerning the application of the MCA exemption:  does it apply on a day by day or truck by truck basis, or for particular periods of time.  It is stipulated that all trucks owned by defendant Wing Keung Enterprises ("WK") satisfied the weight requirements of the MCA exemption.  *See* Hr'g Tr., Jan. 12, 2016; Ct. Ex. 4, Defendants' Answer to Question 3(g)

in Order, Jan. 7, 2016, ECF No. 66 (providing that all trucks weighed over 10,000 pounds).

- *Second*, the mixed legal and factual questions concerning:  (1) whether defendant WK was a "motor carrier" within the meaning of the MCA; (2) whether the driving and loading activities performed by each individual plaintiff qualified as "safety-affecting activities" within the meaning of the MCA exemption; and (3) whether the MCA exemption applies to the time periods during which a plaintiff claims to have worked only intrastate routes.

- *Third*, the magistrate judge shall determine the specific days or time periods, if any, during which each individual plaintiff qualified as an employee falling under the MCA exemption. The magistrate judge shall determine any specific days or time periods during which each individual plaintiff did *not* fall under the MCA exemption and was therefore entitled to the minimum wage and overtime protections of the FLSA and NYLL.

*See* Order, Jan. 21, 2016, ECF No. 75.

The magistrate judge issued a report and recommendation on July 11, 2016.  *See generally* Report and Recommendation, July 11, 2016, ECF No. 78 ("R&R").  Both parties filed timely objections.  *See* Defs.' Objs. to R&R, July 22, 2016, ECF No. 79 ("Defs.' Objs. to R&R"); Pls.' Objs. to R&R, July 25, 2016, ECF No. 80 ("Pls.' Objs. to R&R").

A hearing on the parties' objections and their pending summary judgment motions was conducted on September 7, 2016.  *See generally* Hr'g Tr., Sept. 7, 2016, ECF No. 87.  Oral rulings were rendered on the date of the hearing: the court affirmed the magistrate judge's report and recommendation and denied the parties' summary judgment motions.  *See id.* at 28:25-29:19.

13

## IV.   Law

### A.   Standard of Review

#### 1.   Magistrate Judge Order and Report and Recommendation

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A). Parties may file objections within fourteen days of being served with a copy of the order.  Fed. R. Civ. P. 72(a).  "A party may not assign as error a defect in the order not timely objected to."  *Id*. The district judge must consider any timely objections "and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  *Id*.

With respect to dispositive motions, after "promptly conduct[ing] the required proceedings" and making a record "of all evidentiary proceedings," the "magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact."  Fed. R. Civ. P. 72(b)(1); *see also* 28 U.S.C. § 636(b)(1)(B)-(C).  Specific written objections to the proposed findings and recommendations must be filed by the parties fourteen days after being served with a copy of the recommended disposition.  Fed. R. Civ. P. 72(b)(2).  A district judge determines "de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id*.

#### 2.   Summary Judgment

Summary judgment may only be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor."  *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quotation marks and citation omitted).  The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor."  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citation omitted).  If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quotation marks and citation omitted).

### B.      Minimum Wage and Overtime

Collectively, plaintiffs state that they were employed on and off by defendants from September 2009 to November 2013.  The relevant federal and state minimum wage and overtime provisions applicable to this time period are set out below.

### 1.      Fair Labor Standards Act ("FLSA")

The FLSA, 29 U.S.C. § 201 *et seq*., seeks to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  It provides minimum wage and overtime pay requirements for covered, non-exempt employees.

Section 206 sets the applicable minimum wage at a rate of $7.25 an hour.  The statute provides that:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at . . . $7.25 an hour[.]

29 U.S.C. § 206(a).

Section 207 includes the FLSA's overtime requirements.  It provides that non-exempt covered employees shall be paid at a rate not less than one and one-half times their regular rate of pay for any hours worked over forty within a workweek:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified *at a rate not less than one and one-half times the regular rate at which he is employed*.

29 U.S.C. § 207(a)(1) (emphasis added).

## 2.      New York Labor Law ("NYLL")

The New York Labor Law ("NYLL") includes minimum wage and overtime provisions similar to those of the FLSA.  Under section 652, the minimum wage between January 1, 2007 and December 31, 2013 was $7.15 "or, if greater, such other wage" as is established pursuant to the FLSA:

> Every employer shall pay to each of its employees for each hour worked a wage of not less than . . . $7.15 . . . or, if greater, such other wage as may be established by federal law pursuant to 29 U.S.C. section 206 or its successors or such other wage as may be established in accordance with the provisions of this article.

N.Y. Lab. Law § 652(1).

Section 142-2.1 of the New York Rules and Regulations sets the minimum wage at $7.25 per hour for the period from July 24, 2009 to December 31, 2013:

> (a) The basic minimum hourly wage rate shall be . . . $7.25 per hour on and after July 24, 2009; . . . or, if greater, such other wage as may be established by Federal law pursuant to 29 U.S.C. section 206 or its successors.
>
> (b) The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer, and shall include time spent in traveling to the extent that such traveling is part of the duties of the employee.

12 N.Y.C.R.R. § 142-2.1.

With respect to overtime pay, the NYLL adopts the same standard as the FLSA.  *See Nakahata v. New York–Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013).  Section 142-2.2 of the New York Rules and Regulations states, "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 *et seq*."  12 N.Y.C.R.R. § 142-2.2.

The NYLL also provides that employees shall receive "spread of hours pay"—an extra hour of pay at the basic minimum hourly rate for each day in which the interval between the beginning and end of the workday is longer than ten hours:

> An employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which:
>
> (a) the spread of hours exceeds 10 hours; or
>
> (b) there is a split shift; or
>
> (c) both situations occur.

12 N.Y.C.R.R. § 142-2.4.  The spread of hours pay has been determined to only apply "to those employees making minimum wage and not to those making more than minimum wage." *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015) (citation omitted).

### 3. Motor Carrier Act ("MCA")

#### a) MCA Exemption to FLSA and NYLL Overtime Requirements

The FLSA exempts categories of employees from its overtime requirements.  Those exemptions are to be narrowly construed.  *Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991) (citations omitted).  The burden of proving that an employee falls within a particular FLSA exemption lies with the employer.  *Id.*; *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) ("[E]xemptions to the FLSA are narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit. The burden of invoking these exemptions rests upon the employer.") (quotation marks and citations omitted); *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13-CV-5041, 2015 WL 305362, at *5 (S.D.N.Y. Jan. 23, 2015).

Section 213(b)(1) of the FLSA provides that the overtime pay provisions of section 207 do not apply with respect to employees falling under the MCA:

> The provisions of section 207 of this title shall not apply with respect to -- (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [The Motor Carrier Act of 1935].

29 U.S.C. § 213(b)(1).

The same MCA exemption applicable under the FLSA also applies under the NYLL:

> An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in *and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq., the Fair Labor Standards Act of*

18

> *1938, as amended*; provided, however, that the exemptions set forth
> in section 13(a)(2) and (4) shall not apply.

12 N.Y.C.R.R. § 142-2.2 (emphasis added).

An employee who falls within the MCA exemption is exempt from the overtime provisions of both the FLSA and NYLL. *See Williams*, 2015 WL 305362, at *16.

### b)      Scope of MCA Exemption

"The purpose of the motor carrier exemption is to avoid subjecting employers to overlapping regulatory regimes." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 264 (E.D.N.Y. 2012) (citing *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 661 (1947)); *Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 451 (E.D.N.Y. 2007) (explaining that the "[MCA] exemption was adopted so as to avoid any problems that might arise if two government agencies had overlapping jurisdiction").

It "provides that the FLSA's overtime provision shall not apply to any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *6 (E.D.N.Y. June 18, 2013) (citing 29 U.S.C. § 213(b)(1)) (quotation marks omitted). "[I]t is the existence of the *power* to set to set maximum hours, not its actual exercise, that triggers the motor carrier exemption." *Fox*, 865 F. Supp. 2d at 264 (citations omitted) (emphasis in original); *Bilyou*, 300 F.3d at 229 ("Courts have consistently held that the § 213(b)(1) exemption to § 207 applies regardless [of] whether the Secretary of Transportation has exercised his authority to regulate a particular employee or employer.") (citing *Levinson*, 330 U.S. at 661).

Pursuant to the MCA, the Secretary of Transportation has the authority to set the maximum hours of service of certain employees, including employees of "a motor private carrier, when needed to promote safety of operation:"

19

> The Secretary of Transportation may prescribe requirements for --
> (1) qualifications and maximum hours of service of employees of,
> and safety of operation and equipment of, a motor carrier; and (2)
> qualifications and maximum hours of service of employees of, and
> standards of equipment of, a motor private carrier, when needed to
> promote safety of operation.

49 U.S.C. § 31502(b).  Activities of both the employer and the employee are necessarily considered

when determining the applicability of the MCA exemption, as discussed below in parts c) and d).

*See Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) ("Whether

the motor carrier exemption applies to an employee depends on the nature of both the employer's

and employees' activities.") (citing 29 C.F.R. § 782.2(a)).

### c)        Activities of Employer

It must first be determined whether the employer qualifies as either a "motor carrier" or a

"motor private carrier" under the MCA.  "Motor carrier" is defined as "a person providing motor

vehicle transportation for compensation."  49 U.S.C. § 13102(14).  A "motor private carrier" refers

to:

> [A] person, other than a motor carrier, transporting property by
> motor vehicle when --
>
>> (A) the transportation is as provided in section 13501 of this
>> title;
>>
>> (B) the person is the owner, lessee or bailee of the property
>> being transported; and
>>
>> (C) the property is being transported for sale, lease, rent, or
>> bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15).

Section 13501 of title 49 provides that the Secretary of Transportation has jurisdiction if

the transportation of passengers, property, or both, occurs:

> (1) between a place in--

(A) a State and a place in another State;

(B) a State and another place in the same State through
another State; . . . .

49 U.S.C. § 13501.

Even if the employer falls within either definition, the MCA exemption will not apply if

the employer qualifies for the "Small Vehicle Exception" adopted in the SAFETEA–LU Technical

Corrections Act of 2008, meaning that he or she "performs duties on motor vehicles weighing

10,000 pounds or less."  P.L. 110-244, Title III, § 306(c).  As already noted, the parties agree that

the trucks in question weigh over 10,000 pounds.  *See* Order, Jan. 21, 2016, ECF No. 75; Defs.'

Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74.

### d)      Activities of Employees

If an employer is determined to be a "motor carrier" or "motor private carrier" as defined

in the MCA and does not fall within the Small Vehicle Exception, attention then turns to the

character of the activities of the individual employees.

The Department of Labor ("DOL") has issued bulletins and opinions summarizing relevant

Supreme Court case law and interpreting this aspect of the MCA exemption.  While courts have

relied on them for direction in defining the contours of the exemption, the DOL's statements and

opinions are not entitled to deference; authority to define the scope of the MCA exemption lies

with the Department of Transportation ("DOT").  *See Khan*, 474 F. Supp. 2d at 456, n.8 (E.D.N.Y.

2007) (citing *Levinson*, 330 U.S. at 676-77); *see also Qi Zhang v. Bally Produce, Inc*., No. 12-CV-

1045, 2013 WL 1729274, at *1, n.2 (E.D.N.Y. Apr. 22, 2013) ("The DOL's views regarding the

Motor Carrier Exemption are not entitled to any special deference.  Here, I rely on the DOL's

interpretive bulletin only to outline the general contours of the Motor Carrier Exemption, not to

definitively interpret it.") (internal citation omitted); *Dauphin*, 544 F. Supp. 2d at 273, n.2 (stating

that the DOL's "interpretive guidance regarding the motor carrier exemption, although not binding on this Court, is entitled to respect to the extent that it has the 'power to persuade'") (citations omitted).

According to the DOL, in order for the MCA exemption to apply, an employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."   29 C.F.R. § 782.2(a)(2); *see also Dauphin*, 544 F. Supp. 2d at 273 (stating that, for the MCA exemption to apply, "the employee's activities must affect vehicular 'safety of operations in interstate or foreign commerce'") (quoting *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 698 (1947)); *D'Arpa*, 2013 WL 3010810, at *7 (quoting 29 C.F.R. § 782.2).

"There are four broad categories of workers whose duties are said to directly affect the safety of vehicle operation: drivers, mechanics, loaders, and helpers of the first three." *Fox*, 865 F. Supp. 2d at 266 (citing *Levinson*, 330 U.S. at 673); *see also Williams*, 2015 WL 305362, at *5. While the Secretary of Transportation "is charged with designating which classes of workers directly affect safety, . . . it is for the courts to determine whether a particular worker falls within such a classification." *Fox*, 865 F. Supp. 2d at 266 (citing *Pyramid Motor Freight Corp.*, 330 U.S. at 707); *see also* 29 C.F.R. § 782.2(b)(2) ("The exemption is applicable, under decisions of the U.S. Supreme Court, to those employees and those only whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act.").

22

The instant case concerns four plaintiffs employed as either "drivers" or "loaders."  A "driver" under the MCA "is an individual who drives a motor vehicle in transportation which is, within the meaning of the Motor Carrier Act, in interstate or foreign commerce."  9 C.F.R. § 782.3(a).  Drivers' activities necessarily "affect safety of operations of motor vehicles." *Dauphin*, 544 F. Supp. 2d at 274.  They may fall within the MCA exemption if they work on vehicles engaged in interstate commerce.  *See id.*  They are exempt under the MCA where "interstate travel constitutes a natural, integral, and inseparable part of an employee's activities." *D'Arpa*, 2013 WL 3010810, at *8 (quotation marks and citations omitted).  For drivers, "interstate transportation is a natural, integral, and inseparable part of a worker's duties if the worker is likely to be called on to perform interstate travel, irrespective of how many hours the worker actually devotes to affecting the safety of vehicles engaged in interstate transportation." *Fox*, 865 F. Supp. 2d at 266 (quotation marks and citations omitted).

A "loader" falls within the MCA exemption if he or she has duties that include "the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country" and operates in interstate commerce.  According to the DOL:

> A "loader," as defined for Motor Carrier Act jurisdiction is an employee of a carrier subject to section 204 of the Motor Carrier Act . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country.  A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.

29 C.F.R. § 782.5(a) (citations omitted); *see also Khan*, 474 F. Supp. 2d at 451-52, 456-59.

Loaders who are not involved in the safe operation of vehicles are not exempt under the MCA. *See* 29 C.F.R. 782.5(c) ("An employee is not exempt as a loader where his activities in connection with the loading of motor vehicles are confined to classes of work other than the kind of loading described above, which directly affects 'safety of operation.'") (citations omitted).

"Where only a part of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, courts consider 'the *character of the activities rather than the proportion of either the employee's time or his activities*.'" *Dauphin*, 544 F. Supp. 2d at 274 (emphasis added) (citing *Morris v. McComb*, 332 U.S. 422, 431 (1947)). An employer "must present evidence as to the character of the activities of each plaintiff in order to determine whether he or she is subject to the exemption." *Id.* (citations omitted). An employee is not exempt under the MCA during any particular workweek where his or her activities of an interstate character "have no substantial direct effect on safety of operations" or where those "safety-affecting activities are so trivial, casual, and insignificant as to be *de minimis*." *Id.* (quoting 29 C.F.R. § 782.2(b)(3)).

The interstate requirement does not require crossing state lines. It may be satisfied where the goods being transported within the borders of one state are involved in a "practical continuity of movement in the flow of interstate commerce." *Bilyou*, 300 F.3d at 223 (quotation marks and citations omitted). Courts consider "the intended final destination of the transportation *when that ultimate destination was envisaged at the time the transportation commenced*." *Id.* at 224 (quotation marks and citations omitted) (emphasis added).

e)   **Week-by-Week or Four-Month Analysis**

Courts have adopted different approaches in determining what time periods should be used in analyzing exemption claims. Some have engaged in a week-by-week analysis of an employee's

24

job duties.  *See, e.g.*, *Williams*, 2015 WL 305362, at *9 (collecting cases).  This approach is based
on the language of the DOL regulations, which provide that the exemption shall apply during those
workweeks where the employee is engaging in "activities directly affecting the safety of operation
of motor vehicles in interstate commerce on the public highways":

> If in particular workweeks other duties are assigned to [the
> employee] which result, in those workweeks, in his performance of
> activities directly affecting the safety of operation of motor vehicles
> in interstate commerce on the public highways, *the exemption will
> be applicable to him those workweeks, but not in the workweeks
> when he continues to perform the duties of the non-safety-affecting
> job*.

29 C.F.R. § 782.2(b)(3) (emphasis added).

The regulations also specify that where an employee of a private carrier is not required "to
engage regularly in exempt safety-affecting activities" and his or her "engagement in such
activities occurs sporadically or occasionally as the result of his work assignments at a particular
time, *the exemption will apply to him only in those workweeks when he engages in such activities*."
29 C.F.R. § 782.2(b)(4) (emphasis added); *see also Williams*, 2015 WL 305362, at *9; *Masson v.
Ecolab, Inc.*, No. 04-CV-4488, 2005 WL 2000133, at *7 (S.D.N.Y. Aug. 17, 2005) ("[T]he only
way to determine the overtime compensation owed to an employee is to examine the job duties of
the employee for each week of employment.").

Some courts have not found it necessary to engage in a week-by-week analysis of an
employee's activities "where it is clear that the *reasonable expectation of interstate travel was
continuous throughout the period of employment*."  *Williams*, 2015 WL 305362, at *10 (emphasis
added) (collecting cases).

In a notice of interpretation issued by the Federal Highway Administration ("FHWA"), the
DOT addressed the applicability of the MCA exemption to employees who are likely to be called
upon to perform interstate travel during their employment.   It suggested a four-month analysis:

> The FHWA view is that in order to establish jurisdiction under 49 U.S.C. 304 the carrier must be shown to have engaged in interstate commerce within a reasonable period of time prior to the time at which jurisdiction is in question. The carrier's involvement in interstate commerce must be established by some concrete evidence such as an actual trip in interstate commerce or proof, in the case of a 'for hire' carrier, that interstate business had been solicited. If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could reasonably have been expected to make one of the carrier's interstate runs. Satisfactory evidence would be statements from drivers and carriers, and any employment agreements.
>
> *Evidence of driving in interstate commerce or being subject to being used in interstate commerce should be accepted as proof that the driver is subject to 49 U.S.C. 304 for a 4-month period from the date of the proof*. The FHWA believes that the 4-month period is reasonable because it avoids both the too strict week-by-week approach and the situation where a driver could be used or be subject to being used once and remain subject to jurisdiction under 49 U.S.C. 304 for an unlimited time.

Application of the Federal Motor Carrier Safety Regulations, 46 Fed. Reg. 37902-02 (July 23, 1981) (emphasis added).  Several courts have adopted this four-month analysis for exemption purposes.  *See Williams*, 2015 WL 305362, at *11 (collecting cases).

### 4.   Statute of Limitations

"A cause of action under the FLSA accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated."  *Shu Qin Xu*, 111 F. Supp. 3d at 277 (quoting *D'Arpa*, 2013 WL 3010810, at *5).  "Courts have held that for the purposes of establishing the statute of limitations under the FLSA, a new cause of action accrues with each payday following an allegedly unlawful pay period."  *Addison v. Reitman Blacktop, Inc*., 283 F.R.D. 74, 81 (E.D.N.Y. 2011) (quotation marks and citation omitted).

The FLSA provides a two year statute of limitations on actions to enforce its provisions. If the violation is willful, however, the limitations period is extended to three years.  29 U.S.C. § 255(a); *see also Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014).

The burden of proving willfulness lies with the plaintiff.  *Eschmann v. White Plains Crane Serv., Inc.*, No. 11-CV-5881, 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014).  A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).  "Reckless disregard" is the "failure to make adequate inquiry into whether conduct is in compliance with the [FLSA]."  5 C.F.R. § 551.104.  "Mere negligence is insufficient."  *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (citing *McLaughlin*, 486 U.S. at 133).  To demonstrate that an employer acted with reckless disregard, a plaintiff must only show "that the employer knew or had reason to know that it was or might have been subject to the FLSA."  *Eschmann*, 2014 WL 1224247, at *5 (quotation marks and citation omitted).  "Neither an employer's good-faith but incorrect assumption regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness."  *Id.* (quotation mark and citation omitted); *accord Padilla v. Sheldon Rabin, M.D., P.C.*, No. 15-CV-1708, 2016 WL 1369386, at *7 (E.D.N.Y. Apr. 6, 2016).

Willfulness is usually a question for the jury:

> [D]istrict courts in this circuit have generally left the question of willfulness to the trier of fact. When courts have decided the question of willfulness at the summary judgment stage, either the FLSA violation was due to a misclassification of the plaintiff as being exempt, or there existed no genuine dispute that the employer had been on notice that it was subject to the FLSA.

*Eschmann*, 2014 WL 1224247, at *5 (quotation marks and citations omitted); *see also Shu Qin Xu*, 111 F. Supp. 3d at 278.

Unlike the FLSA, the statute of limitations for a claim under the NYLL is six years regardless of willfulness. N.Y. Lab. Law § 663(3); *Shu Qin Xu*, 111 F. Supp. 3d at 278 ("In contrast to FLSA claims, NYLL claims have a six-year statute of limitations with no showing of willfulness required."); *Padilla*, 2016 WL 1369386, at *8.

## V.  Application of Law to Facts

Defendants' motion for summary judgment seeks dismissal of plaintiffs' overtime and minimum wage claims. They claim that (1) they are exempt from the overtime requirements of the FLSA and NYLL because plaintiffs fall within the MCA exemption; and, in any event, (2) plaintiffs were paid in accordance with the minimum wage and overtime requirements of the FLSA and NYLL. *See generally* Defs.' Summ. J. Mem.

Plaintiffs cross-moved for summary judgment. They claim that (1) they are entitled to "shortfall and liquidation damages" because defendants falsified or failed to keep "proper and accurate employment records" in violation of the FLSA and NYLL; and (2) they "were fully or partially qualif[ied] for the FLSA and NYLL protections as non-exempt employees" pursuant to the MCA. *See generally* Pls.' Summ. J. Mem.

For the reasons stated below and orally on the record, the magistrate judge's recommendation is adopted in full. As a result, defendants' summary judgment motion is granted in part and denied in part. Plaintiffs' summary judgment motion is denied.

### A.  FLSA and NYLL Overtime Claims: Extent of MCA Exemption

According to defendants, Wing Keung is "a motor carrier involved in the transport of goods between a place in a State and a place in another State." Splinder Affirmation at ¶ 4. Defendants

claim that each individual plaintiff's route assignments and AR invoices (showing where goods were delivered on a certain route) indicate "that each individual plaintiff was involved in the transportation of goods between a place in a State and a place in another State, or from a State and another place in the same State through another State."  *Id*. at ¶ 8.  In support of this statement, defendants submitted the following documentation:

- Route assignments for each individual plaintiff.  *See* Defs.' Summ. J. Mot. at Exs. D1-D-4, ECF Nos. 13-9 to 13-12.  Defendants explain that the route assignments show the date on which each plaintiff worked and the route assigned (if any) on those dates. Each route is identified by a number.  *See* Aff. of Simon Chan in Supp. of Defs.' Mot. for Summ. J., Oct. 24, 2014, ECF No. 13-3 ("S. Chan Aff."), at ¶ 8.  An excerpt from Tang's route assignment records (Defs.' Summ. J. Mot. at Ex. D1, ECF No. 13-9) is included below.

Plaintiff: Chao Hui Tang

| Date | Route | Date | Route | Date | Route | Date | Route | Date | Route |
|------|-------|------|-------|------|-------|------|-------|------|-------|
| 10/7/2011 | | 11/15/2011 | | 12/24/2011 | | 2/1/2012 | | 3/11/2012 | / |
| 10/8/2011 | | 11/16/2011 | | 12/25/2011 | | 2/2/2012 | | 3/12/2012 | |
| 10/9/2011 | | 11/17/2011 | | 12/26/2011 | | 2/3/2012 | 32 | 3/13/2012 | 32 |
| 10/10/2011 | | 11/18/2011 | | 12/27/2011 | | 2/4/2012 | 25 | 3/14/2012 | |
| 10/11/2011 | | 11/19/2011 | | 12/28/2011 | | 2/5/2012 | / | 3/15/2012 | |
| 10/12/2011 | | 11/20/2011 | | 12/29/2011 | | 2/6/2012 | | 3/16/2012 | 32 |
| 10/13/2011 | | 11/21/2011 | | 12/30/2011 | | 2/7/2012 | 32 | 3/17/2012 | 31 |

- AR invoices for each individual plaintiff.  *See* Defs.' Summ. J. Mot. at Exs. E1-E4, ECF Nos. 13-13 to 13-16.  Defendants explained that the AR invoices show "the date of delivery, the customer to whom that plaintiff made a delivery, the address of that customer, and the route (listed under "Zone") number."  S. Chan Aff. at ¶ 9.  As an example, an excerpt from Tang's AR invoices (Defs.' Summ. J. Mot. at Ex. E1, ECF No. 13-13) is set out below.

## AR Invoices

| Date | Customer | Name | Address | City | Zone | Enter by | Invoice no. | Amount |
|------|----------|------|---------|------|------|----------|-------------|--------|
| 06/30/12 | P515 | 新 中 國(570)(180 | 418 WASHINGTON | WILLIAMSP | 32 | RONG | 778765 | 722.25 |
| 06/30/12 | P516 | 新 榕 華(570)(180 | 1967 WEST 4 | WILLIAMSP | 32 | CHAO | 778731 | 403.30 |
| 06/30/12 | P517 | 熊 貓(570)(180 | 335 ROSE STREET | WILLIAMSP | 32 | CHAO | 778729 | 701.82 |
| 06/30/12 | P6031 | GRACE BUFFET | 811 LOYALSOCK AVE | MONTOUR | 32 | JIN | 778724 | 1,359.05 |
| 06/30/12 | P503 | 長 城 (180 EXIT 23) | 1780 E 3 RD.ST | Williamspo | 32 | JIN | 778663 | 1,437.02 |
| 06/30/12 | P501 | 和 FORTUNE | 1645 ELMIRA ST, | SAYRE | 32 | JIN | 778652 | 1,205.15 |
| 06/30/12 | P518 | 香 港 (570)(180 | 500 Pine St | Williamspo | 32 | JELLY | 778651 | 1,092.65 |
| 06/30/12 | P510 | FAMILY WOK (180 | 309- BROAD STREET | MONTOUR | 32 | PETER | 778645 | 1,457.41 |
| 06/30/12 | P520 | LING LING | 2062 LYCOMING | WILLIAMSP | 32 | JIN | 778636 | 832.63 |
| 06/30/12 | P521 | 金 城 | 22 W MAIN ST | CANTON | 32 | JELLY | 778629 | 733.51 |
| 06/30/12 | P513 | 茉 莉 花(570)(180 | 331 WASHINGTON | WILLIAMSP | 32 | JELLY | 778614 | 540.53 |
| 06/30/12 | P506 | 長 城(570)(220 | RT6 BRADFORD | TOWANDA | 32 | JIN | 778613 | 1,034.85 |

Defendants contend that, even if plaintiffs claim they were only involved in transporting goods within the State of New York, the goods they were transporting "included goods sourced from places outside of New York" and were "ultimately intended by either the seller or [Wing Keung] to be destined for shipment to or through New York, such that their transport forms a part of a 'practical continuity of movement' across State lines from the point of origin to the point of destination."  Splinder Affirmation at ¶ 9; *see also* S. Chan Aff. at ¶ 10.

Plaintiffs opposed defendants' motion for summary judgment.  *See* Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., Nov. 17, 2014, ECF No. 15 ("Pls.' Opp'n Mem.").  They claimed that defendants had failed to meet their burden of proof with respect to the applicability of the MCA exemption.  *See id*. at 5-11.   Specifically, plaintiffs argued that defendants did not submit documents relating to the nature of plaintiffs' activities and failed to show that: (1) Tang's and Q. Liu's employment activities were those of loaders which "affected vehicular 'safety of operations in interstate or foreign commerce'" *id*. at 5-7; and (2) Li and J. Liu's activities as drivers "involved interstate travel of a character that was more than de minimis or that interstate travel was a 'natural, integral and . . . inseparable part' of the position plaintiffs held."  *Id*. at 8-10.

In their cross-motion for summary judgment, plaintiffs argued that they "fully or partially" qualified for the protections of the FLSA and NYLL as non-exempt employees under the MCA. *See* Pls.' Summ. J. Mem. at 7-11.

### 1.   Magistrate Judge Report and Recommendation

On consent of the parties, the question of whether and to what extent the case is governed by the MCA exemption to the FLSA and NYLL overtime requirements was respectfully referred to the magistrate judge. *See* Order, Jan. 21, 2016, ECF No. 75; *see also supra* Part III.D.

On July 11, 2016, the magistrate judge issued a report and recommendation addressing the applicability of the MCA exemption. *See generally* R&R. Following a thorough analysis of the law and facts, she determined that plaintiffs were covered by the MCA exemption during the periods of time where they worked on vehicles traveling interstate routes, as demonstrated by their own sworn declarations, as well as the route assignments and AR invoices submitted by defendants.

Following the applicable legal framework, the magistrate judge first looked at the activities of the employer. She determined that Wing Keung is a "motor private carrier" within the meaning of the MCA, because Wing Keung is the owner of property being sold and transported to further a commercial enterprise. *See id.* at 13-14; 49 U.S.C. § 13102(15). As noted earlier, the parties stipulated that all trucks owned by defendant satisfied the weight requirements of the MCA exemption. *See* R&R at 14; Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74; Order, Jan. 21, 2016, ECF No. 75.

The magistrate judge then turned to the activities of the employees. She concluded that both plaintiff drivers and plaintiff loaders were engaged in "safety affecting activities." Whether

and to what extent they were covered by the MCA exemption therefore turned on whether plaintiffs worked on vehicles engaged in interstate travel.  *See* R&R at 14-19.

She found that defendants did not sufficiently establish that the goods they transported were part of a "practical continuity of interstate movement," so that plaintiffs would fall under the MCA exemption regardless of the activities performed.  *Id*. at 20-22 (stating that "[w]hen a defendant merely asserts that some goods have ended up out of state, absent any specific factual evidence, the defendant fails to demonstrate 'a practical continuity of interstate movement' that would render plaintiffs exempt regardless of their routes.").

The magistrate judge also determined that defendants failed to demonstrate that "interstate travel was a natural and integral part of plaintiffs' job duties during the periods they did not engage in interstate travel."  *Id*. at 23.  Drivers and loaders were not randomly assigned routes.  Rather, because it was "beneficial" for them to "be familiar with the routes," once they trained for a particular route they were kept on that route.  *See* Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74.  During time periods when they were assigned to *intra*state routes, they were not "likely to be called upon" to travel out-of-state.  *See* R&R at 23 ("As plaintiffs were not randomly assigned routes but rather kept the same routes for certain time periods, defendants have not demonstrated that interstate travel was a natural and integral part of plaintiffs' job duties during the periods they did not engage in interstate travel.").

She concluded that plaintiffs were only exempt under the MCA when they worked on vehicles performing interstate routes.  *See id*. at 23 ("Accordingly, as it is defendants' burden to prove the exemption applies, plaintiffs were only exempt under the MCA during the time periods in which the plaintiffs actually worked on vehicles which travelled out of the state.").

She determined that the available records, in the form of handwritten route assignments and corresponding invoices including the date of the delivery, the customer details and the numbered route, supported a finding that, for specified time periods, plaintiffs worked on vehicles traveling out-of-state.  Because during these times plaintiffs were performing "safety-affecting activities" in vehicles engaged in interstate commerce, they fell within the MCA exemption to the FLSA and NYLL overtime requirements.  *See id.* at 23-27.  The chart below, included in her report and recommendation, summarizes the magistrate judge's findings:

| Plaintiff | Time Periods Exempt | Time Periods Not Exempt |
|---|---|---|
| Tang | June through July 2012; January through November 2013 | September 2011 through May 2012; August through December 2012 |
| Li | August through November 2013 | September 2009 through December 2010; May 2012 through January 2013 |
| Q. Liu | June through August 2012 | July 2011 through May 2012 |
| J. Liu | October 2010 through July 2011; October 2012 through April 2013 | May 2013 through October 2013 |

*Id.* at 27.

## 2.    Plaintiffs' Objections

Plaintiffs' objections are not directed to specific portions of the report and recommendation.  *See* Pls.' Objs. to R&R.  They contend that: (1) whether the MCA exemption applies is irrelevant because plaintiffs were treated as non-exempt hourly employees; (2) the wage provisions of the FLSA apply even if the MCA exemption also applies; (3) a factual dispute exists as to how much plaintiffs were actually paid; and (4) defendants did not meet their burden of proving the application of the MCA exemption.  *See generally id.*

These objections are addressed, in turn, below.

### a)  Defendants' Treatment of Plaintiffs as Hourly Employees

Plaintiffs argue that whether they are exempt from the FLSA and NYLL overtime requirements under the MCA is irrelevant, because they were treated by defendants as hourly employees. *See id*. at at 3-4.  Because defendants "informed the Plaintiff employees that they were to receive overtime," plaintiffs argue that "a determination of the issue of a status of exemption is irrelevant." *Id*. at 3.

This argument was raised for the first time in their objections to the magistrate judge's report and recommendation.  It was not addressed in either plaintiffs' opposition to defendants' summary judgment motion, or in their own cross-motion for summary judgment.

At the September 7, 2016 summary judgment hearing, plaintiffs failed to substantiate their position. *See, e.g.*, Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 8:18-9:1.  The case law they cite is inapposite.  Plaintiffs refer to *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564 (E.D.N.Y. 2015) in support of their claim that "[t]he issue of whether an employee is exempt only matters if the employer misclassifies an employee and consequently pays a fixed salary to a non-exempt employee." Pls.' Objs. to R&R at 3.  In *Carter*, the court determined that the MCA exemption did not apply because the defendant employer did not qualify as either a "motor carrier" or "motor private carrier" under the MCA. *Carter*, 78 F. Supp. 3d at 568-69.  Specifically: (1) the property owned by the employer was generally transported by third parties such as FedEx and UPS; and (2) the employer conceded that the vans it owned which carried goods and people across the United States did not weigh more than 10,000 pounds, thereby falling within the Small Vehicle Exception to the MCA. *Id*.  The court did not consider the employees' activities or method of payment in reaching its determination.  While the plaintiff in *Carter* alleged that defendant had misclassified him as an exempt employee and paid him a fixed salary regardless of any overtime worked, the

34

case does not support the instant plaintiffs' argument that exemption under the MCA only applies where an employee is misclassified as non-exempt and paid a fixed salary. *See* Pls.' Objs. to R&R at 3.

Plaintiffs argue that "[i]n a FLSA [action] where the employer relies on an exemption as a defense, the Court should consider . . . whether the employer paid the employee a fixed salary." *see id*. at 3. This argument is without merit. *See* Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 8:18-9:1.

Plaintiffs cite to *Auer v. Robbins*, 519 U.S. 452 (1997) and *McDowell v. Cherry Hill Twp.*, No. 04-CV-1350, 2005 WL 3132192 (D.N.J. Nov. 21, 2005) in support of this statement. Neither supports plaintiffs' position. Both cases address section 213(a)(1) of the FLSA, which provides an exemption for "bona fide executive, administrative, or professional" employees from the statute's overtime and minimum wage requirements. *See* 29 U.S.C. § 213(a)(1). Under section 231(a)(1), the Secretary of Labor is provided with "broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees." *Auer*, 519 U.S. at 456 (citing 29 U.S.C. § 213(a)(1)) (alterations in original). In its regulations defining the scope of the exemption, the Secretary has provided for a "salary-basis" test to determine whether an employee falls within the exemption. *See* 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."); *see also McDowell*, 2005 WL 3132192, at *6-7 (addressing the "salary-basis" test in determining whether the plaintiff qualified for the administrative exemption under the FLSA).

The statutory scheme at issue in *Auer* and *McDowell* is not applicable to the present dispute. Under section 213(b)(1) of the FLSA—the MCA exemption at issue in the instant case—the authority to set maximum hours of service rests with the Secretary of Transportation. The scope

of the exemption is not defined in section 213; it is to be determined by reference to the MCA. *See* 29 U.S.C. § 213(b)(1); 49 U.S.C. § 31502.  The MCA, in turn, does not include a "salary-basis" test comparable to the one set forth by the Secretary of Labor in relation to section 213(a)(1) of the FLSA.  As explained above, an employee will fall within the MCA exemption if (1) the employer qualifies as a "motor carrier" or "motor private carrier" as defined under the MCA; (2) the employee is engaged in "safety-affecting activities"; and (3) is on a vehicle involved in interstate commerce.  *See* 29 C.F.R. § 782.2(a); *see also supra* Part IV.B.3; R&R at 5-13.

Finally, plaintiffs claim that an "employer's promise to pay the employees on an hourly basis with overtime, where appropriate . . . acts as an implied promise to continue treating the employees as 'non-exempt.'"  Pls.' Objs. to R&R at 3-4.  Plaintiffs cite to *Ahrens v. United States*, 225 Fed. App'x 866 (Fed. Cir. 2007) in support of this proposition.  In *Ahrens*, the dispute concerned the federal government's performance of its obligations under a memorandum of understanding it had entered into with the federal employee union.  *Id.*  The case is not relevant to the question at issue here.

Plaintiffs' objection is rejected.

### b)        Probative Value of Time Records

Plaintiffs next argue that the time records produced by defendants, even if assumed to be complete and accurate, have "limited probative value."  *See* Pls.' Objs. to R&R at 4.  According to plaintiffs, the records "at best, show that the Plaintiff employees agreed to the *calculations* of the number of hours worked and the amount that would be paid per each hour worked, however the records do *not* show that the workers actually received this money" and should not be treated as receipts of payment.  *Id.* (emphasis in original).

This issue is not relevant to the magistrate judge's report and recommendation. The report and recommendation only addresses the applicability of the MCA exemption and the extent that defendants may be relieved from the FLSA's and NYLL's overtime obligations. Relevant to this inquiry are the employer and the employees' activities—not how much was paid or how many hours plaintiffs worked. *See supra* Part IV.B.3.

Whether and to what extent defendants' records show that plaintiffs were actually paid in accordance with defendants' obligations—as delineated by the FLSA, NYLL, and MCA—is a factual question that was not referred to the magistrate judge and has not been decided.

Plaintiffs' objection is rejected.

### c)      Applicability of FLSA Wage Provisions

Plaintiffs next argue that it was incorrect for the magistrate judge to state that the FLSA does not apply to time periods covered by the MCA exemption. They point out that the MCA exemption is limited to the payment of overtime—it does not excuse non-compliance with other obligations under the FLSA and NYLL, including the statutes' minimum wage requirements. A factual dispute exists as to how, and how much, plaintiffs were actually paid, plaintiffs argue, which is not addressed by determining the applicability of the MCA exemption. According to plaintiffs, even if the MCA exemption applies to them, they were denied payment in accordance with the FLSA and NYLL minimum wage obligations. *See* Pls.' Objs. to R&R at 4-6.

In her report and recommendation, the magistrate judge addressed the question of whether the case is governed by the MCA exemption. *See* R&R at 2 (stating that this court "referred specific questions to me for a Report and Recommendation . . . to determine whether the case is governed by the Motor Carrier Act exemption"); Order, Jan. 21, 2016, ECF No. 75 (referring specific questions concerning the applicability of the MCA exemption to the magistrate judge).

She clearly noted at the outset that the MCA exemption, to the extent it applies to plaintiffs in the instant case, relieves an employer of its *overtime* obligations under the FLSA and NYLL.  *See, e.g.*, R&R at 5-6 (concluding that "if an employee falls within the MCA exemption, the employee is exempt from both the FLSA and the NYLL *overtime* provisions") (emphasis added).

The magistrate judge properly applied the relevant legal framework to the facts at issue in the instant case and determined that, for certain specified periods of time, plaintiffs fell within the MCA exemption.  For these time periods, plaintiffs were deemed to be exempt from the *overtime* provisions of the FLSA and NYLL, not from the statutes as a whole.   The magistrate's recommendation that defendants' summary judgment motion be denied in part and granted in part can only relate to that portion of defendants' motion that addresses plaintiffs' overtime claims (*see* Defs.' Summ. J. Mem. at Part II.A).  No other question was before her.

Plaintiffs' objection is rejected.

### d) Defendants' Failure to Establish the Exemption "Plainly and Unmistakably"

Finally, plaintiffs argue that defendants did not meet their burden of proving that the MCA exemption applies.   According to plaintiffs, defendants "failed to *plainly and unmistakably* establish the exemption."  Pls.' Objs. to R&R at 7 (emphasis in original).  Plaintiffs do not point to any specific deficiency in defendants' case.   Rather, they generally advance a catch-all objection, stating that "[t]o the extent there is any doubt about interstate commerce, job duties, time periods, how and how much the plaintiffs were actually paid that are relevant to the analysis, the Court should rule in the plaintiffs' favor in light of the high legal standards for both the exemption and the summary judgment motion."  *Id*.

The magistrate judge correctly considered and applied the legal standards relevant to determination of the MCA exemption and summary judgment.   She considered the parties'

undisputed factual assertions, their "sworn affidavits setting forth admissible facts based on personal knowledge" as well as "unsworn, written declarations 'subscribed . . . as true under penalty of perjury, and dated.'" R&R at 4.

*First*, she determined that the employer, defendant Wing Keung, falls within the "motor private carrier" definition of the MCA. *Id*. at 13-14. Under the MCA, "motor private carrier" is defined as "a person, other than a motor carrier, transporting property by motor vehicle" when "the person is the owner, lessee, or bailee of the property being transported; and the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15).

In the instant case, it is undisputed that Wing Keung is in the business of selling and distributing fresh produce, refrigerated food and restaurant supplies to restaurants located primarily in New York, New Jersey and Connecticut and that Wing Keung is a carrier registered with the DOT. *See* Splinder Affirmation at ¶¶ 5-6; Defs.' Summ. J. Mot. at Ex. C, ECF No. 13-8. The parties stipulated, as noted earlier, that all trucks owned by defendants weighed over 10,000 pounds, making the Small Vehicle Exception to the MCA inapplicable. *See* Order, Jan. 21, 2016, ECF No. 75; Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74 (providing that all trucks weighed over 10,000 pounds).

The magistrate correctly determined that defendant-employer Wing Keung qualifies as a "motor private carrier" within the meaning of the MCA, because Wing Keung is the owner of property being transported to further a commercial enterprise. R&R at 13-14.

*Second*, the magistrate judge turned to the activities of plaintiff employees, as required by the relevant regulatory framework. She first determined that all four plaintiffs performed "safety-affecting activities," as described in the DOL regulations. *See* R&R at 14-19.

39

Plaintiffs Li and J. Liu worked as delivery truck drivers. *See* Amend. Compl. at ¶¶ 6, 8; *see also supra* Part II.B. The magistrate correctly determined that, because it is clear that driving affects safety, the only question with respect to these plaintiffs was whether their activities involved interstate commerce. *See* R&R at 14 ("As the Supreme Court and the DOL guidance explicitly recognize driving as a 'safety affecting activity,' courts assume driving affects safety and solely examine how much driving in *interstate* commerce is necessary for employees to fall within the MCA exemption.") (emphasis in original).

Plaintiffs Tang and Q. Liu worked as loaders. *See* Tang Second Decl. at ¶ 2 (stating that his "duty was to load the outbound trucks at the warehouse from Flushing, Queens . . . ride with the truck and help the driver to unload the truck when we arrived [at] the Chinese restaurants either in New York or another state"); Q. Liu Decl. at ¶ 8 ("I moved the goods from store shelves to trucks as shipping staff directed. . . . Once the trucks stopped . . . the driver would direct me to remove whatever goods . . . the customer ordered from the truck. I then unloaded the goods and moved goods into the customer's store."); 29 C.F.R. § 782.5(a) (providing that a loader under the MCA "is an employee of a carrier subject to section 204 of the Motor Carrier Act . . . whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country. A 'loader' may be called by another name, such as 'dockman,' 'stacker,' or 'helper,' and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse . . . ."); *see also supra* Part II.C.

According to the DOL regulations—which provide guidance, but are not legally binding—a loader's activities directly affect the safe operation of the vehicle if the loader

> has responsibility when such motor vehicles are being loaded, for
> exercising judgment and discretion in planning and building a
> balanced load or in placing, distributing, or securing the pieces of
> freight in such a manner that the safe operation of the vehicles on

> the highways in interstate or foreign commerce will not be jeopardized. . . .
>
> The mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual, or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of "loading" which directly affects "safety of operation."

29 C.F.R. § 782.5 (citations omitted).

In the instant case, it is undisputed that plaintiff loaders were responsible for physically loading the merchandise on the trucks, riding alongside the drivers, unloading the truck at the customer's destination, and then riding back on the trucks to defendants' warehouse.  Specifically, plaintiff Tang explained that his duty was to

> load the outbound trucks at the warehouse from Flushing, Queens . . . ride with the truck and help the driver to unload the truck when we arrived [at] the Chinese restaurants either in New York or another state. . . . *The loader is always following the assigned truck to help the driver to load or unload the goods*, and back to the company with the truck at the end of the day.

Tang Second Decl. at ¶ 2 (emphasis added).  Plaintiff Q. Liu stated that he physically loaded and unloaded the merchandise on and off the trucks, under the supervision of shipping staff and the truck driver.  Q. Liu Decl. at ¶ 8.

Plaintiffs maintain that because Q. Liu and Tang were not required to use their judgment in deciding how to load goods on to the trucks for optimal interstate highway travel, their job did not entail "safety-affecting activities."  *See, e.g.*, Pls.' Opp'n Mem. at 6-7; *see also* You Decl. at ¶ 16 (stating that "Plaintiff Chaohui Tang and Qingze Liu's job activities did not involve exercise of judgment and discretion in loading goods in the manner affecting the safe operation of the vehicle on the interstate highways, they are not exempted loaders as defined under the FLSA").

41

Defendants alleged that plaintiffs Q. Liu and Tang were jointly responsible for adjusting the goods after several deliveries in order to affect the safe operation of vehicles on interstate highways. *See* Spindler Reply Affirmation at ¶¶ 11-12. While they received instructions as to what to load on the truck, they were responsible for determining how to load the goods and for unloading them at the delivery destinations. *See* Z. Chen Reply Decl. at ¶¶ 4-9, 13-14; S. Chan Reply Decl. at ¶¶ 3-8, 12-13.

The magistrate judge was correct in determining that plaintiffs' acknowledged responsibility in loading and unloading the freight is sufficient to qualify them as "loaders" within the meaning of the MCA, thereby providing an exemption from the overtime requirements of the FLSA and NYLL. *See* R&R at 15-19. As correctly noted in the report and recommendation, the plain language of the DOL regulation provides that a loader is anyone who has responsibility for either "exercising judgment and discretion in planning and building a balanced load *or* in placing, distributing, or securing the pieces of freight" so to ensure the safe operation of the vehicle. *See id.* at 17-18 (citing 29 C.F.R. § 782.5) (emphasis in original).

Recognizing that an employee who actually performs the loading and unloading of the goods on the truck, even if at someone else's direction, performs a "safety-affecting activity" comports with the purpose of the MCA and is consistent with relevant case law:

> An employee who actually and regularly loads the truck clearly has a significant impact on the safe operation of the vehicle. Even without exercising any discretion, plaintiffs are expected to follow the directions of a supervisor and correctly load a vehicle, which has a tremendous impact on the safety of the vehicle while it is in transit. . . .
>
> Rather than a small or insignificant portion of their duties, the plaintiffs who were loaders were *solely* responsible for loading and unloading the truck. The loading performed by plaintiffs therefore constituted a "safety-affecting" activity within the meaning of the MCA.

*Id*. at 18-19; *see also Levinson*, 330 U.S. at 668-70 (noting that the Interstate Commerce Commission determined that the job activities of a "loader" impact the safe operation of a vehicle); *Khan*, 474 F. Supp. 2d at 457, n.10 ("Though it is obvious to the point of almost being susceptible of proof by judicial notice, the loading or rearrangement of cargo on a truck is obviously related to the safe operation of that vehicle on a highway. . . . the proper loading of [a] . . .vehicle directly affects the safe operation of such vehicles on the highway and . . . employees who actually 'load' them fall within the Motor Carrier Exemption."). The court concludes that the loaders' work in the instant case affected safe operation of the trucks they were on. Shifting merchandise not properly loaded can constitute a hazard to the truck carrying the goods as well as to following vehicles should any part of the load fall on the roadway.

*Finally*, after having determined that the employer falls within the MCA definition of "motor private carrier" and that plaintiffs' job duties entailed "safety-affecting activities," the magistrate judge turned to whether plaintiffs' duties were carried out in vehicles engaged in interstate commerce. *See* R&R at 19-27. It was first determined that defendants had *not* carried their burden of proving that the MCA exemption applied to plaintiffs regardless of the actual route traveled, on the theory that they were either engaged in part of a "practical continuity of movement" across state lines or were "likely to be called upon" to perform out-of-state travel. *See id*. at 19-23. Because drivers and loaders were not randomly assigned routes, but were instead kept on the same route for certain periods of time, when they were assigned to *intra*state routes, they were not "likely to be called upon" to travel out-of-state. *See* Defs.' Resps. to Ct.'s Questions, Jan. 12, 2016, ECF No. 74 (explaining that "[t]he drivers, driver's helpers and loaders were not randomly assigned to the out of state routes as it was beneficial for each driver, helper and loader to be familiar with the routes, and once trained for the route was kept on that route"); R&R at 23

43

("As plaintiffs were not randomly assigned routes but rather kept the same routes for certain time periods, defendants have not demonstrated that interstate travel was a natural and integral part of plaintiffs' job duties during the periods they did not engage in interstate travel.").

The magistrate concluded that, "as it is defendants' burden to prove the exemption applies, plaintiffs were only exempt under the MCA during the time periods in which the plaintiffs *actually worked on vehicles which travelled out of the state*." R&R at 23 (emphasis added). She correctly adopted a week-by-week approach to determine when plaintiffs fell within the exemption. *See id.* at 10, 19, 22-27. The parties do not challenge the magistrate judge's weekly analysis. *See, e.g.*, Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 11:4-23.

In order to determine the time periods during which plaintiffs actually worked interstate routes, the magistrate judge turned to plaintiffs' own declarations, as well as the "detailed handwritten route assignments" and AR invoices submitted by defendants. It was determined that:

- With respect to **plaintiff Tang**:
  - Defendants' records confirmed he made interstate deliveries in June 2012 (to Pennsylvania), July 2012 (to New Jersey), as well as between January 2013 and November 2013 (to New Jersey and Connecticut). *See* R&R at 23-24; Defs.' Summ. J. Mot. at Exs. D1, ECF No. 13-9 and E1, ECF No. 13-13. Defendants did not carry their burden for the period from September 2011 through May 2012, and August 2012 through December 2012. *See* R&R at 24-25.

- With respect to **plaintiff Li**:
  - Plaintiff Li stated that during the employment periods from September 25, 2009 to December 2010 and from May 2012 through January 8, 2013 he only made deliveries within the State of New York. Li Second Decl. at ¶¶ 4-5. The

defendants agreed that for the majority of his employment, Li only made intrastate deliveries.  Spindler Affirmation at ¶ 21 (stating that plaintiff Li was "mostly assigned to routes confined solely in New York").  The magistrate judge thus found that defendants did *not* carry their burden of proving that plaintiff Li was exempt under the MCA for these time periods.  *See* R&R at 25.

- o   For the period from August 1, 2013 through November 16, 2013, the magistrate judge determined that defendants' records confirmed plaintiff was assigned to routes in Connecticut and New Jersey and he did in fact travel out of state.  *See id*. at 25, n.18; Defs.' Summ. J. Mot. at Exs. D2, ECF No. 13-10 and E2, ECF No. 13-14.

- With respect to **plaintiff Q. Liu**:

  - o   Defendants' records showed that, from June 2012 to August 2012, plaintiff Q. Liu consistently took trips to New Jersey.  *See* R&R at 25-26.  Plaintiff Q. Liu did not submit a second declaration describing whether his routes were interstate or intrastate, and he has not disputed defendants' account.

- With respect to **plaintiff J. Liu**:

  - o   Plaintiff J. Liu fell within the MCA exemption only for those time periods during which he admitted to working on interstate routes to Connecticut and New Jersey—*i.e.*, from October 2010 through July 2011 and from October 2012 to April 2013.  *See* R&R at 26; J. Liu Second Decl. at ¶¶ 2-4.  Defendants failed to establish that plaintiff fell under the MCA exemption for his final period of employment, from May 2013 to October 2013.  *See* R&R at 26; J. Liu Second Decl. at ¶ 4.

45

The magistrate judge properly relied on plaintiffs' declarations and defendants' route assignments and AR invoices to establish the time periods during which plaintiffs traveled out of state and therefore fell within the MCA exemption.  While plaintiffs have raised a challenge to the authenticity of some employment records—found unsubstantiated by the magistrate judge—they have not challenged the veracity of claims as to defendants' route assignments and AR invoices.

Plaintiffs' general objection to the magistrate judge's determination as to the MCA applicability is rejected.

### 3.    Defendants' Objections

### a)    Plaintiff Tang's MCA Exemption

Defendants object to the period of time during which plaintiff Tang was found to be non-exempt under the MCA, arguing that he himself admitted to driving interstate routes from September 2011 to September 2012.  According to defendant, Tang should only be considered non-exempt from the FLSA and NYLL requirements under the MCA from September 2012 to December 2012.  *See* Defs.' Objs. to R&R at 1.

Plaintiff Tang stated that "[f]rom September 2011 to July or August, 2012, [he] worked for the long distant routes *to upstate New York, New Jersey and Pennsylvania*."  Tang Second Decl. at ¶ 4 (emphasis added).  He then stated that he "changed to the New York routes" from "around September 2012 to September 2013."  *Id*. at ¶ 5.

For the period between September 2011 to July or August 2012, he did not specify when he traveled to upstate New York and when he traveled out of state.  The magistrate judge turned to defendants' records to determine when he traveled outside of New York.  She concluded that the route assignments and AR invoices supported a finding that Tang traveled out of state from June 2012 through July 2012.  R&R at 24.

Defendants have not pointed to any evidence, other than plaintiffs' affidavit, to support a finding that Tang traveled out of state for any additional time periods. *See* Defs.' Objs. to R&R; *see also* Defs.' Summ. J. Mot. at Ex. D1, ECF No. 13-9 (Tang's route assignments do not show any routes assigned for the year 2011) and Ex. E1, ECF No. 13-13 (defendants did not submit any AR invoices for Tang for employment periods prior to June 2012). They have not satisfied their burden.

Defendants' objection is rejected.

### b)      Statute of Limitations

Defendants maintain that their position that "the statute of limitations has run with respect to a portion of the time period the [report and recommendation] found Messrs. Li, Tang and Liu not to be exempt is still before" the court. Defs.' Objs. to R&R at 1-2.

The issue of the statute of limitations was raised by defendants as an affirmative defense in their answer. Answer to Am. Compl., May 22, 2014 ECF No. 8, at ¶ 92. It was not raised in their summary judgment motion and was not referred to the magistrate judge. Properly, it was not addressed in her report and recommendation.

Defendants' objection is rejected.

### c)      Defendants' Summary Judgment Motion

Defendants reiterate their position that, regardless of the applicability of the MCA, plaintiffs were properly paid in accordance with the FLSA and NYLL. Defs.' Objs. to R&R at 1-2.

These arguments were not referred to the magistrate judge. They were properly not addressed in her report and recommendation.

Defendants' objection is rejected.

### 4.    Magistrate Judge Conclusions Adopted

Having considered and rejected the parties' objections to the report and recommendation, the conclusions reached by the magistrate judge are adopted.  These are as follows:

The portion of defendants' summary judgment motion that addresses plaintiffs' overtime claims (*see* Defs.' Summ. J. Mem. at Part II.A) is denied in part and granted in part: it is granted with respect to the time periods during which the magistrate judge determined that the MCA exemption is applicable as to each individual plaintiff, and denied for the remaining periods of employment.

The portion of plaintiffs' summary judgment motion addressing plaintiffs' overtime claims and applicability of the MCA exemption (*see* Pls.' Summ. J. Mem. at Part II) is denied.  To the extent that plaintiffs fell within the MCA exemption, they were not owed overtime payment.  To the extent that they did not fall within the MCA exemption, there is a factual dispute over how much they were paid and whether any additional overtime is owed.  Resolution of plaintiffs' surviving FLSA and NYLL overtime claims is inappropriate for summary judgment since the relevant facts are not clear.

### B.    FLSA and NYLL Minimum Wage Claims

The MCA does not provide an exemption from the minimum wage provisions of the FLSA and NYLL.  *See* 29 U.S.C. § 213(b)(1); *supra* at Part IV.B.3.  Plaintiffs claim that defendants failed to comply with these obligations.  *See* Am. Compl. at Counts III and IV.  It is argued that they were paid a flat monthly rate irrespective of the times they clocked in and out, and that the employee reports submitted by defendants were doctored.  *See, e.g.*, Tang Second Decl. at ¶¶ 6-7; Li Second Decl. at ¶¶ 7-8; J. Liu Second Decl. at ¶¶ 8-9; *see also supra* Part II.B-C.

Defendants moved for summary judgment, arguing that plaintiffs were paid, at a minimum, the applicable statutory $7.25 per hour minimum wage as well as overtime. *See* Defs.' Summ. J. Mem. at Part II.B.  In support of their motion, they submitted the following documents:

- Weekly "Employee Details Reports" for each individual plaintiff. *See* Defs.' Summ. J. Mot. at Exs. F1-F4, ECF Nos. 13-17 to 13-20.  The reports indicate the time in which the employees clocked in and out each day, and calculate the hours worked, including any overtime.  They appear to be signed by the individual plaintiffs.  Defendants explain that the Employee Details Reports with the "+ Added Item" contain items that were added manually "in the event that an employee forgets to clock in and/or clock out.  Efforts were taken to ensure that the times manually entered in were accurate; they were based on conversations had with the respective employee and confirmation from said employee's supervisors and coworkers."  Spindler Reply Affirmation at ¶ 29; *see also* S. Chan Reply Decl. at ¶ 23.

- Paystubs for each individual plaintiff.  *See* Defs.' Summ. J. Mot. at Exs. G1-G4, ECF Nos. 13-21-13-24.  Submitted paystubs purport to provide the amount being paid for each regular, overtime and "bonus" hour (where applicable) worked by each plaintiff on a weekly basis.  These documents appear to be signed by the individual plaintiffs.

Plaintiffs raised a challenge to the authenticity of the records submitted by defendants. Specifically, they seemed to allege that the Employee Details Reports were falsified, since they claimed to have worked different—and longer—hours than those recorded on the documents provided by defendants.

The issue was referred to the magistrate judge for decision. *See* Order, Mar. 12, 2015, ECF No. 26.  It was determined that plaintiffs failed to establish that the records were falsified.  *See*

Order, Aug. 7, 2015, ECF No. 52, at 13; *supra* Part III.B.  Plaintiffs did not file timely objections to the magistrate's order.  Instead, they filed a cross-motion for summary judgment, in which they again claimed that the records were doctored, submitted additional evidence, and sought damages. *See* Pls.' Summ. J. Mot. at 4-7.

Plaintiffs' claim regarding the falsification of documents is dismissed.  They had an opportunity to challenge the magistrate judge's determination and failed to do so.  They cannot now raise the same claims again through a summary judgment motion.

A question of fact remains as to how plaintiffs were paid.  Defendants explained that plaintiffs were paid on a monthly basis in accordance with the hours they worked.  The paystubs recorded hours worked and wages due on a weekly basis, even though plaintiffs were then paid monthly.  *See* Splinder Affirmation at ¶ 14.  Plaintiffs agreed that they were made to sign between four and five documents each month, and that they were paid on a monthly basis.  They argue that the monthly wage was a flat one, independent of the hours actually worked.  *See supra* Part II.B-C.

In her order, the magistrate judge pointed out that defendants' pay practices raised questions, including why were plaintiffs required to clock in and out if they consistently testified that they were paid a single straight wage per month.  *See* Order, Aug. 7, 2015, ECF No. 52, at 10-11.

The available records present gaps and inconsistencies.  For example, defendants failed to submit paystubs for time periods during which defendants claim they were employed by Wing Keung.  *See infra* Part VII.  Defendants submitted paystubs indicating that plaintiffs were paid during time periods in which plaintiffs have claimed to be working in different states and for different companies.  *Id.*

Because of factual disputes, resolution of plaintiffs' FLSA and NYLL minimum wage claims through summary judgment is inappropriate.

The part of defendants' summary judgment motion relating to plaintiffs' minimum wage claims (*see* Defs.' Summ. J. Mem. at Part II.B) is denied.

The part of plaintiffs' summary judgment motion relating to the alleged falsification of documents by defendants (*see* Pls.' Summ. J. Mem. at 4-7) is denied.

### C.     Lack of 56.1 Statement

Plaintiffs argue that defendants' summary judgment motion should be denied in its entirety because defendants failed to file a statement of material facts pursuant to local rule 56.1.  *See* Pls.' Opp'n Mem. at 3-5.

"A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citing *Wight v. Bankamerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000)).  As held by the Court of Appeals for the Second Circuit, "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  *Id.* (quotation marks and citation omitted).

The purpose of a 56.1 statement is to "streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."  *Id.* at 74 (citations omitted).  The rule "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record."  *Id.*

51

Defendants' failure to file a statement pursuant to Rule 56.1 is not fatal to their summary judgment motion.  The motion is decided—and denied, in part—on the merits.

### D.      Plaintiffs' Motion for Reconsideration

Subsequent to the hearing of September 7, 2016, while the court was preparing the instant memorandum and order embodying decisions made at the hearing, plaintiffs moved for reconsideration.  *See* Pls.' Mot. for Reconsideration, Sept. 16, 2016, ECF No. 88.  They ask that the court consider two matters that it allegedly overlooked when orally ruling on the parties' summary judgment motions—*i.e.*, the allegations that plaintiffs were paid straight monthly wages rather than hourly wages, and determination of how much they were actually paid.  *Id.*

The court has considered the arguments in plaintiffs' motion for reconsideration.  None of them provide evidence or argument not already fully considered and explicated in the instant memorandum or oral findings.  Plaintiffs' motion for reconsideration is denied.

Confirming findings by the court orally on the record, summary judgment in favor of defendants is granted *only* with respect to plaintiffs' overtime claims for periods of employment during which the magistrate judge found they fell within the MCA exemption.  Summary judgment is denied as to all other claims.

Whether plaintiffs were paid in accordance with minimum wage obligations of the FLSA and NYLL, and whether they were paid overtime for the periods of employment during which the magistrate judge determined they were *not* covered by the MCA exemption, are factual questions about which there is disagreement.  Resolution through summary judgment is inappropriate.

E.        **Statute of Limitations**

Defendants raised the running of the statute of limitations on some claims as an affirmative defense.  *See* Answer to Am. Compl., May 22, 2014 ECF No. 8, at ¶ 92.  This issue was not raised in their summary judgment motion.  It was not briefed by the parties.

Plaintiffs filed their original complaint on January 16, 2014.  *See* Compl., Jan. 16, 2014, ECF No. 1 (the complaint erroneously indicates it was signed on January 16, 2013.  ECF records show the action was commenced in January 2014).  Plaintiffs each claimed they are owed back wages and overtime for different time periods, ranging from September 2009 to November 2013, and that they were not provided the annual notices required under New York's Wage Theft Prevention Act.  *See generally id*.

An amended complaint was filed on March 7, 2014.  *See* Am. Compl.  It included the same claims and factual allegations, but was styled as a class action complaint.  *See id*.

Rule 15 of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).

The Court of Appeals for the Second Circuit has indicated that the district court should "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  *Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2d Cir. 2006), *as amended* (Oct. 3, 2006) (quotation marks and citations omitted).

"For a newly added action to relate back, the basic claim must have arisen out of the conduct set forth in the original pleading."  *Id*.  (quotation marks and citations omitted).  The "central inquiry" under Rule 15 of the Federal Rules of Civil Procedure "is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within

53

the statute of limitations by the general fact situation alleged in the original pleading." *Id*. Where the amended complaint does not set forth a new claim "but renders prior allegations more definite and precise, relation back occurs." *Id*.

In the instant case, in their amended complaint plaintiffs re-allege essentially the same claims and factual allegations that they set forth in their original complaint. Defendants were on notice "of the matters raised in the amended pleading . . . by the general fact situation alleged in the original pleading." *See id*. The allegations in plaintiffs' amended complaint are deemed to relate back to the original complaint for purposes of the statute of limitations.

### 1.      FLSA Claims

With respect to plaintiffs' FLSA allegations, claims for unpaid wages and overtime that accrued prior to January 16, 2011 are dismissed. Those claims arose three or more years prior to January 16, 2014, the date on which the original complaint was filed. The limitations period under the FLSA has run regardless of whether the alleged violation was willful. *See* 29 U.S.C. § 255(a); *see also supra* Part IV.B.4.

Whether the statute of limitations has run on plaintiffs' claims for unpaid wages arising after January 16, 2011, but prior to January 16, 2012, is a question of fact that will need to be determined by a jury. These claims were brought within three years but over two years after they accrued. The running of the limitations period depends upon whether the alleged violations were willful: if they were, the limitations period is three years and the claims are properly raised. If there was no willfulness, then the limitations period is two years and the claims are not timely.

Any claim for violations that allegedly occurred on or after January 16, 2012 is within the limitations period regardless of willfulness, and is not barred on statute of limitations grounds.

### 2.    NYLL Claims

The statute of limitations for the NYLL claims is six years, regardless of willfulness.  N.Y. Lab. Law § 663(3); *see also supra* Part IV.B.4.  All NYLL claims raised by plaintiffs fall within the six year limitations period.

## VI.    Conclusion

Plaintiffs' summary judgment motion is denied.  Plaintiffs' motion for reconsideration is denied.

Defendants' motion for summary judgment is granted in part and denied in part, as follows:

- *Granted* with respect to plaintiffs' overtime claims for periods of employment during which the magistrate judge found they were exempt under the MCA;

- *Denied* with respect to plaintiffs' overtime claims for periods of employment during which the magistrate judge found they were *not* exempt under the MCA;

- *Denied* with respect to plaintiffs' minimum wage claims.

Defendants did not move for summary judgment on plaintiffs' fifth and final cause of action—failure to provide annual notices as required under the Wage Theft Prevention Act.  *See* Am. Compl. at Count V.  This claim is therefore not addressed in the instant memorandum and order.  If not stipulated to, it will be tried.

Although not raised by defendants in their summary judgment motion, the statute of limitations has expired with respect to the FLSA claims arising prior to January 16, 2011.  Whether the statute of limitations has run on plaintiffs' FLSA claims arising after January 16, 2011 but before January 16, 2012 is a question of fact turning on whether violations were willful.  It will be determined by a jury.

There continues to be disagreement over the exact time periods during which plaintiffs worked for defendants.  *See infra* Part VII; *see also* Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 4:14-5:12, 19:1-21:2.  The parties shall attempt to resolve these discrepancies by stipulation.  *See* Hr'g Tr., Sept 7, 2016, ECF No. 87 at 5:13-22.  For the disputed time periods, they shall attempt to reach an understanding as to (1) whether plaintiffs worked for defendants; and (2) whether plaintiffs worked on vehicles engaged in interstate travel.  In the absence of a stipulation, the court is prepared to find that plaintiffs worked for defendants during the time periods for which defendant has provided paystub records.  *See id.* at 23:12-20.

Trial will proceed on all surviving claims.  These are as follows: (1) plaintiffs' overtime claims under the FLSA and NYLL for the periods of employment during which the magistrate judge determined they were *not* exempt under the MCA; (2) plaintiffs' minimum wage claims under the FLSA and NYLL; (3) plaintiffs' claims under the New York Wage Theft Prevention Act; and (4) any claims for spread of hours payments under the NYLL for those plaintiffs who were paid the minimum wage.  The jury will determine whether any FLSA violations were willful, in order to establish whether some claims are barred by the applicable statute of limitations.

Trial shall commence on February 6, 2017 at 2:00 p.m. in Courtroom 10B South.  By consent, a jury will be selected before the magistrate judge that morning, at a time set by the magistrate judge.

*In limine* motions will be heard on January 30, 2017 at 10:30 a.m. in Courtroom 10B South. By January 23, 2017, the parties shall submit to the court proposed full jury charges and verdict sheets, *in limine* motions, and any supporting briefs.  They shall exchange and file with the court: (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits, and any stipulations regarding admissibility and authenticity; (2) lists of proposed witnesses together

with brief summaries of their proposed testimony; and (3) stipulations with respect to all undisputed facts.

The proposed verdict sheets are to be broken down by employment period and include all issues of fact raised by plaintiffs. *See* Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 27:10-15.

Set forth as an appendix is a draft FLSA and NYLL claims overview chart produced by the court to assist the parties on providing stipulations or proposed charges. *See infra* Part VII.

The parties shall promptly complete discovery. Any disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge.

The matter is referred to the magistrate judge for further settlement discussions. Whenever the parties are before the magistrate judge, the individual owner of the business and the plaintiffs shall appear in person. *See* Hr'g Tr., Sept. 7, 2016, ECF No. 87 at 28:9-12. The parties may use court-annexed mediation to attempt to resolve the dispute.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

September 28, 2016
Brooklyn, New York

VII.   **Appendix**

**Draft FLSA and NYLL Claims Overview Chart**

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| **Tang (loader)** | September 2009 to January 2011<br><br>Plaintiff only alleges he worked this time period in his first declaration | $7.25 | This time period not addressed in R&R re MCA exemption<br><br>Parties to attempt to reach stipulation | No paystub records | Flat monthly wage of $2,300 | Yes, regardless of willfulness (complaint filed > 3 years from alleged violation) | No |
|  | January 2011 to August 2011<br><br>Plaintiff only alleges he worked this time period in his first declaration | $7.25 | This time period not addressed in R&R re MCA exemption<br><br>Parties to attempt to reach stipulation | No paystub records | Flat monthly wage of $2,300 | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | September 2011 | $7.25 | One and one-half times the regular rate | No paystub records | Flat monthly wage of $2,300 | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |
| | October 2011 to January 2012 | $7.25 | One and one-half times the regular rate | $7.25 per hour; $10.875 for overtime hours | Flat monthly wage of $2,300 | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | January 2012 to May 2012 | $7.25 | One and one-half times the regular rate | $7.25 per hour; $10.875 for overtime hours | Flat monthly wage of $2,300 | No | No |
| | June 2012 to July 2012 | $7.25 | Exempt under MCA | $7.25 per hour; $10.875 for overtime hours | Flat monthly wage of $2,400 | No | No |
| | August 2012 to December 2012 | $7.25 | One and one-half times the regular rate | $7.25 per hour; $10.875 for overtime hours | Flat monthly wage of $2,300 | No | No |
| | January 2013 to November 2013 | $7.25 | Exempt under MCA | $7.25 per hour; $10.875 for overtime hours | Flat monthly wage of $2,400 | No | No |
| **Q. Liu (loader)** | July 2011 to August 2011 | $7.25 | One and one-half times the regular rate | No paystub records | Flat wage ranging from $2,200 to $2,300 per month | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |

60

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | September 2011 to January 2012 | $7.25 | One and one-half times the regular rate | $7.25 per hour; $10.875 for overtime hours | Flat wage ranging from $2,200 to $2,300 per month | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |
| | January 2012 to May 2012 | $7.25 | One and one-half times the regular rate | $7.25 per hour; $10.875 for overtime hours | Flat wage ranging from $2,200 to $2,300 per month | No | No |
| | June 2012 to July 2012  Plaintiff does not include this time period in his declaration | $7.25 | Exempt under MCA | $7.25 per hour; $10.875 for overtime hours | N/A | No | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | August 2012 Plaintiff does not include this time period in his declaration | $7.25 | Exempt under MCA | No paystub records | N/A | No | No |
| Li (driver) | September 2009 to December 2009 | $7.25 | One and one-half times the regular rate | No paystub records | Flat wage ranging from $2,800 to $2,900 per month | Yes, regardless of willfulness (complaint filed > 3 years from alleged violation) | No |
| | January 2010 to December 2010 | $7.25 | One and one-half times the regular rate | $9.25 per hour; $13.875 for overtime hours | Flat wage ranging from $2,800 to $2,900 per month | Yes, regardless of willfulness (complaint filed > 3 years from alleged violation) | No |
| | March 2011 Plaintiff claims he was working for a different company | $7.25 | This time period not addressed in | $9.25 per hour; $13.875 for overtime hours | N/A | Question of fact: depends on whether violation was | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | in New Orleans during this time | | R&R re MCA exemption<br><br>Parties to attempt to reach stipulation | | | willful (complaint filed > 2 years but within 3 years from alleged violation) | |
| | May 2012 to December 2012 | $7.25 | One and one-half times the regular rate | $8.00 per hour; $12.00 for overtime hours | Flat wage ranging from $2,800 to $2,900 per month | No | No |
| | January 2013 | $7.25 | One and one-half times the regular rate | No paystub records | Flat wage ranging from $2,800 to $2,900 per month | No | No |
| | August 2013 to November 2013 | $7.25 | Exempt under MCA | $8.00 per hour; $12.00 for overtime hours | Flat wage ranging from $2,800 to $2,900 per month | No | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| **J. Liu (driver)** | October 2010 to November 2010 | $7.25 | Exempt under MCA | No paystub records | Flat monthly wage of $2,800 | Yes, regardless of willfulness (complaint filed > 3 years from alleged violation) | No |
| | November 2010 to January 2011 | $7.25 | Exempt under MCA | $9.00 per hour; $13.50 for overtime hours | Flat monthly wage of $2,800 | Yes, regardless of willfulness (complaint filed > 3 years from alleged violation) | No |
| | January 2011 to July 2011 | $7.25 | Exempt under MCA | $9.00 per hour; $13.50 for overtime hours | Flat monthly wage of $2,800 | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | | | | | | alleged violation) | |
| | August 2011 to December 2011<br><br>Plaintiff claims he was working for a different company in Las Vegas during this time | $7.25 | This time period not addressed in R&R re MCA exemption<br><br>Parties to attempt to reach stipulation | $9.00 per hour; $13.50 for overtime hours | N/A | Question of fact: depends on whether violation was willful (complaint filed > 2 years but within 3 years from alleged violation) | No |
| | October 2012 to April 2013 | $7.25 | Exempt under MCA | $8.00 per hour; $12.00 for overtime hours | Flat monthly wage of $2,800 | No | No |
| | May 2013 to September 2013 | $7.25 | One and one-half times the regular rate | $8.00 per hour; $12.00 for overtime hours | Flat monthly wage of $2,800 | No | No |

| Plaintiff | Employment Period | Applicable Minimum Wage under FLSA and NYLL | Applicable Overtime Wage under FLSA and NYLL | Wages Paid According to Defendants' Records | Wages Paid According to Plaintiffs | FLSA Statute of Limitations Expired (2 years; if violation willful 3 years) | NYLL Statute of Limitations Expired (6 years, regardless of willfulness) |
|---|---|---|---|---|---|---|---|
| | September 2013 to October 2013 | $7.25 | One and one-half times the regular rate | No paystub records | Flat monthly wage of $2,800 | No | No |